No. 99-627

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 83

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES GENE MARTIN, a/k/a

JAMES GENE TRUJILLO,

Defendant and Appellant.


APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Margaret Borg and Leslie Ocks, Missoula Public Defenders Office

Missoula, Montana

For Respondent:

Hon. Joe Mazurek, Attorney General; Jim Wheelis, Assistant Attorney

General, Helena, Montana

Fred Van Valkenburg, Missoula County Attorney; Karen Townsend,

Deputy Missoula County Attorney, Missoula, Montana

Submitted on Briefs: December 7, 2000
Decided: May 10, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 James Gene Martin, a/k/a James Gene Trujillo (Martin), appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on a jury verdict finding him guilty of forgery, attempted deliberate homicide, felony theft, escape, aggravated burglary, and felony assault. We affirm in part and reverse in part.

¶2 Martin raises the following issues:

¶3 1. Does sufficient evidence support the verdict convicting Martin of attempted deliberate homicide?

¶4 2. Did the District Court err in refusing instructions on assault on a peace officer as a lesser included offense of attempted deliberate homicide?

¶5 3. Did the court err in refusing instructions on mitigated attempted deliberate homicide?

¶6 4. Does sufficient evidence support the verdict convicting Martin of escape?

¶7 5. Does sufficient evidence support the verdict convicting Martin of aggravated burglary?

¶8 6. Does sufficient evidence support the verdict convicting Martin of felony assault?

¶9 7. Does sufficient evidence support the verdict convicting Martin of felony theft?

¶10 8. Did the prosecutor commit misconduct during closing argument and, if so, did the misconduct deprive Martin of a fair trial?

BACKGROUND

¶11 Just before 6:00 p.m. on October 21, 1998, Martin walked up to the drive-up window of the Western Security Bank in Missoula, Montana, and attempted to cash a forged check. The teller on duty recognized Martin from pictures which had been distributed to bank employees after he had passed an earlier forged check on the same bank account. The teller attempted to stall Martin while her supervisor called the police.

¶12 Missoula City Police Sergeant Robert Heinle (Heinle) responded to the call from the bank. As Heinle, in full police uniform, approached the bank on foot, Martin spotted him and began to run away. Heinle gave chase. With Heinle shouting "Halt" or "Stop," they crossed the street, weaving between vehicles stopped at a red light in rush-hour traffic. When they reached a parking lot across the street from the bank, Martin turned and fired two shots from a Colt handgun at Heinle. One shot hit Heinle in the shoulder and damaged his spinal cord, paralyzing him and dropping him to the ground immediately.

¶13 Martin stopped to pick up Heinle's service revolver, then continued running through streets and alleys in downtown Missoula, pursued first by witnesses to the shooting and then by additional police and sheriff's officers. Martin entered a bakery through an unlocked back door and when officers followed him in, ran out through the front door. Martin was apprehended a short time later behind a piece of plywood in an alley.

¶14 The State of Montana (State) charged Martin with committing the offenses of forgery, attempted deliberate homicide, felony theft, escape, aggravated burglary, and assault. Due to the amount of local publicity in Missoula, trial was held in Butte, Montana. The jury heard testimony from numerous witnesses to the events at the bank, the shooting and the subsequent chase, including Heinle and the police officers and sheriff's deputies who responded to an "officer down" message after Heinle was shot. After a week-long trial, the jury found Martin guilty of all the charged offenses. The District Court sentenced him and entered judgment. Martin appeals.

## DISCUSSION

¶15 1. Does sufficient evidence support the verdict convicting Martin of attempted deliberate homicide?

¶16 The District Court instructed the jury that, in order to convict Martin of attempted deliberate homicide, it must find he "purposely or knowingly attempted to cause the death of Robert Heinle, a human being, by performing an act which constituted a material step toward the commission of the offense of deliberate homicide." The jury also was instructed that "a person acts purposely . . . when it is his conscious object to cause that result" and that "[a] person acts knowingly . . . when he is aware that there exists a high probability that his conduct will cause a specific result." The jury convicted Martin of attempted deliberate homicide, and he contends the evidence was insufficient to prove he acted with the purpose of causing Heinle's death.

¶17 The existence of a mental state is normally inferred from conduct and surrounding circumstances. *See* § 45-2-103(3), MCA. There is no requirement in the definitions of the requisite mental states of

"knowingly" or "purposely" that the criminal act be carefully thought out, planned well in advance, or wise. *See* § 45-2-101(34) and (64), MCA. We review the sufficiency of the evidence to support a jury verdict in a criminal trial to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7. If events are capable of different interpretations, the trier of fact determines which is most reasonable, since it is in the best position to observe the witnesses and determine their credibility. *State v. Brogan* (1993), 261 Mont. 79, 87, 862 P.2d 19, 24; *State v. Flack* (1993), 260 Mont. 181, 189, 860 P.2d 89, 94.

¶18 Martin points to witness testimony that, after he shot Heinle, the expression on Martin's face was one of surprise, shock, and panic. Another witness testified on cross-examination that, after the shooting, Martin appeared confused and looked as though he did not know what to do. Martin contends that, if he had intended to kill Heinle, he would not have looked surprised or confused when Heinle dropped to the ground. Martin also points to the videotaped statement he gave to police officers in which he explained he fired the gun because "I was just hopin' I could turn around and, and you know kinda scare him to where he'd just like back off and then I'd have, you know, a chance to get a bigger head start on him."

¶19 The evidence on which Martin relies, however, is only part of the evidence presented to the jury. In Martin's videotaped statement, he gave conflicting stories, at first saying that an acquaintance of his had shot Heinle. Witnesses to the events prior to the shooting testified that, during the foot chase, Martin appeared calm. According to one witness, Heinle was running hard but Martin was merely jogging or "moseying." Another witness testified he saw Martin turn and slow before he shot. The jury also heard testimony from an acquaintance of Martin's that Martin carried his pistol with him every day and had boasted he would shoot anyone who "got in [his] way," even a "cop." Moreover, it is undisputed that Martin shot at Heinle not once, but twice.

¶20 On this record, with the required deference for jury resolution of conflicts in the evidence and viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of attempted deliberate homicide beyond a reasonable doubt. We hold that sufficient evidence supports the verdict convicting Martin of attempted deliberate homicide.

¶21 2. Did the District Court err in refusing instructions on assault on a peace officer as a lesser included offense of attempted deliberate homicide?

¶22 The District Court refused Martin's offered instructions on assault on a peace officer as a lesser included offense of attempted deliberate homicide. Martin asserts error.

¶23 This Court reviews jury instructions to determine whether the instructions as a whole fully and fairly instruct the jury on the law applicable to the case. *State v. Hall*, 1999 MT 297, ¶ 39, 297 Mont. 111, ¶ 39, 991 P.2d 929, ¶ 39. In order for the district court to instruct the jury on a lesser included offense, the record must contain evidence from which the jury could rationally find the defendant guilty of the lesser offense and acquit of the greater, and the offense must actually constitute an included offense of the crime charged. *State v. Beavers*, 1999 MT 260, ¶ 23, 296 Mont. 340, ¶ 23, 987 P.2d 371, ¶ 23.

¶24 Relying on *State v. Castle* (1997), 285 Mont. 363, 948 P.2d 688, and § 46-1-202(8)(c), MCA, Martin contends assault on a peace officer is a lesser included offense of attempted deliberate homicide. Section 46-1-202(8)(c), MCA, defines an included offense as one that "differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."

¶25 In *Castle*, we held that, under the express terms of § 46-1-202(8)(c), MCA, assault is a lesser included offense of deliberate homicide. *Castle*, 285 Mont. at 368, 948 P.2d at 691. We reasoned that assault differs from deliberate homicide only in that a less serious injury is sufficient to establish its commission. *Castle*, 285 Mont. at 368, 948 P.2d at 691.

¶26 The offense of assault on a peace officer does not bear the same kind of relationship to the offense of attempted deliberate homicide. A person who purposely or knowingly causes bodily injury to a peace officer commits the offense of assault on a peace officer. Section 45-5-210(1)(a), MCA. A person who does any act toward purposely or knowingly causing the death of another human being commits the offense of attempted deliberate homicide. *See* §§ 45-4-103 and 45-5-102, MCA. It is true that the offense of assault on a peace officer differs from the offense of attempted deliberate homicide in that a less serious injury may suffice to establish its commission-indeed, no injury is required for attempted deliberate homicide; an act constituting a material step toward commission of the offense is all that is required. *See* § 45-4-103, MCA. However, assault on a peace officer, unlike attempted deliberate homicide, also requires proof of an additional fact not necessary for attempted deliberate homicide: that the victim is a peace officer.

¶27 We conclude that assault on a peace officer is not a lesser included offense of attempted deliberate homicide under § 46-1-202(8)(c), MCA, and that *Castle* is inapplicable here. Therefore, we hold the District Court did not err in refusing instructions on assault on a peace officer as a lesser included offense of attempted deliberate homicide.

¶28 3. Did the court err in refusing instructions on mitigated attempted deliberate homicide?

¶29 As stated under Issue 2, in order for a district court to instruct the jury on a lesser included offense, the record must contain evidence from which the jury could rationally find the defendant guilty of the lesser offense and acquit of the greater, and the offense must actually constitute an included offense of the crime charged. *Beavers*, ¶ 23. Mitigated attempted deliberate homicide is a lesser included offense of attempted deliberate homicide only when the defendant presents evidence of mitigation. *See State v. Knight* (1991), 251 Mont. 85, 89, 822 P.2d 99, 102.

¶30 The evidence required is that the person acted under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. *See* § 45-4-103, MCA. In rejecting Martin's offered instructions on mitigated attempted deliberate homicide, the District Court determined the evidence Martin presented did not rise to the level of extreme mental or emotional distress.

¶31 Martin relies on *State v. Buckley* (1976), 171 Mont. 238, 557 P.2d 283, for the proposition that an instruction on mitigated attempted deliberate homicide is required if there is any evidence of mitigation. He points again to the evidence of the look of surprise, shock, and panic on his face after he shot Heinle and, in addition, to evidence that he and his pregnant girlfriend were homeless and he was unemployed. Martin contends that whether he acted under extreme mental or emotional stress was a question of fact for the jury.

¶32 Martin's reliance on *Buckley* is misplaced. There, we concluded that the defendant's statement that he was "in a subtle state of mind, a subconscious state of mind" when he shot his victim was not sufficient to justify a jury instruction on mitigated deliberate homicide, because it did not constitute evidence of extreme mental or emotional distress. *Buckley*, 171 Mont. at 242, 557 P.2d at 285. We did not conclude that any quantum of evidence of mitigation, no matter how small, is sufficient to require an instruction on mitigated attempted deliberate homicide.

¶33 We have stated:

> [F]or a defendant accused of deliberate homicide to be entitled to an instruction on mitigated deliberate homicide, the defendant must put forth some evidence demonstrating that he or she acted under extreme mental or emotional stress for which there is reasonable explanation or excuse.

*State v. Howell*, 1998 MT 20, ¶ 20, 287 Mont. 268, ¶ 20, 954 P.2d 1102, ¶ 20. This requires evidence of an extreme emotional stress resulting from provocation of some sort, in the form of a reasonable excuse or explanation. *Hans v. State* (1997), 283 Mont. 379, 399, 942 P.2d 674, 686, *citing State v. Dumlao* (Haw. 1986), 715 P.2d 822, 829-31. As an example of a type of evidence which is insufficient, we have repeatedly determined that evidence of a defendant's anger or intoxication is insufficient to warrant an instruction on mitigated deliberate homicide. *See, e.g., State v. Goulet* (1997), 283 Mont. 38, 42, 938 P.2d 1330, 1332-33.

¶34 Martin's evidence concerning the look on his face after he shot Heinle, and his unemployment, homelessness, and pregnant girlfriend do not indicate an extreme emotional stress resulting from provocation of some sort forming a reasonable excuse or explanation for shooting Heinle. We conclude that Martin's evidence is not sufficient to support his claim that, when he shot Heinle, he had extreme mental or emotional stress for which there is reasonable explanation or excuse. We hold, therefore, that the District Court did not err in refusing instructions on mitigated attempted deliberate homicide.

¶35 4. Does sufficient evidence support the verdict convicting Martin of escape?

¶36 The State charged Martin with escape based on his running away from Heinle and the other officers who pursued him. Martin asserts there was insufficient evidence to support his conviction on this charge

because he was never placed in official detention and, as a result, he could not have formed the requisite mental state for the offense of escape.

¶37 Section 45-7-306(2), MCA, provides that "[a] person subject to official detention commits the offense of escape if the person knowingly or purposely eludes official detention." Among other things, "official detention" means placement of a person in legal custody as a result of the actual or constructive restraint or custody of the person by a police officer pursuant to arrest. *See* § 45-7-306(1)(a)(ii), MCA. Here, both parties agree that, absent an arrest, Martin could not be convicted of escape.

¶38 "An arrest is made by an actual restraint of the person to be arrested or by the person's submission to the custody of the person making the arrest." Section 46-6-104(1), MCA. In *State v. Thornton* (1985), 218 Mont. 317, 322-23, 708 P.2d 273, 278, we adopted the more modern jurisprudential position that "actual restraint" does not require physical restraint. We also adopted a three-part test to determine whether an individual is under arrest: (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person arrested.

¶39 Here, as to the first part of the test, it is undisputed that Heinle had authority to arrest Martin. The second element is whether Heinle asserted his authority with intention to effect an arrest. Several witnesses testified that, as he chased Martin, Heinle yelled out for Martin to "stop" or "halt." The witnesses all recognized Heinle as a police officer because he was in full police uniform, and Martin admitted he knew Heinle was a "cop" as he was being pursued. We conclude Heine asserted his authority with intention to effect an arrest.

¶40 The third element is restraint of the person arrested. Where, as here, restraint is claimed to have been accomplished via an oral statement by the officer, rather than via physical restraint, the pivotal question is whether a reasonable person--innocent of any offense--would have felt free to walk away. *Thornton*, 218 Mont. at 323, 708 P.2d at 277-78 (citations omitted). In this case, although Heinle was unable to place Martin under physical restraint and there is no evidence that Heinle said "You are under arrest," we conclude that a reasonable person would not have felt free to walk away from the uniformed police officer running after him and shouting "Halt" or "Stop."

¶41 The dissent mischaracterizes our conclusion by stating it as "if an officer intends to arrest and restrain a person, saying 'stop' constitutes an oral statement of arrest and restraint." Our conclusion is not that broad. Indeed, as our discussion indicates, we have merely taken into account the facts and circumstances before us.

¶42 Martin was in the act of committing a criminal offense when he was approached by Heinle-a uniformed police officer. For his part, Heinle was approaching Martin in response to a call from the bank where Martin was in the act of perpetrating a crime similar to one he had committed in the recent past against the same bank. Spotting the approaching police officer, Martin fled and Heinle gave chase, shouting for Martin to "halt" or "stop." During the ensuing foot chase, Martin turned and fired twice at Heinle and, when the officer fell, severely wounded, Martin retrieved the policeman's revolver before

fleeing again. Martin admitted that he recognized Heinle as a policeman and that he shot at the officer to facilitate his escape-a situation that Martin had prepared for by carrying a pistol and boasting that he would shoot anyone who "got in [his] way," even a "cop."

¶43 Under these facts and context, it is inconceivable that Martin did not recognize Heinle's command that he "halt" or "stop" as the officer's assertion of authority with intention to effect Martin's arrest. It is equally inconceivable that Martin reasonably believed he was free to walk away.

¶44 On this regard, Martin's flight and subsequent conduct provides indisputable evidence that he knew: (1) Heinle was approaching him at the bank to arrest him for his present and past criminal conduct; (2) that by demanding he "halt" or "stop," Heinle was asserting his authority and intention to effect Martin's arrest; and (3) that Martin was not free to walk away. Any other conclusion would exalt form over substance, defy logic and common sense, and ascribe a talismanic significance to the words "You are under arrest" that the law does not require.

¶45 We conclude there was sufficient evidence to support a jury finding that Martin was placed in official detention. That being the only element of the escape charge Martin contests, and viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of the offense of escape beyond a reasonable doubt. Therefore, we hold sufficient evidence supports the verdict convicting Martin of escape.

¶46 5. Does sufficient evidence support the verdict convicting Martin of aggravated burglary?

¶47 With regard to the offense of aggravated burglary, the District Court instructed the jury:

> A person commits the offense of aggravated burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein, and in effecting entry or in the course of committing the offense or in immediate flight thereafter, he is armed with a weapon.

Martin's argument that the evidence was insufficient to prove aggravated burglary hinges entirely on his argument under Issue 4. The aggravated burglary charge was based on his entry into the bakery for the purpose of committing the offense of escape. He asserts that, absent sufficient evidence to support the conviction for escape, thereby also proving the "with the purpose to commit an offense therein" element of aggravated burglary, the evidence was insufficient to support a conviction of aggravated burglary in this case.

¶48 We determined above, however, that there was sufficient evidence to support Martin's conviction for escape and, as a result, his argument as to aggravated burglary also fails. We hold sufficient evidence supports the verdict convicting Martin of aggravated burglary.

¶49 6. Does sufficient evidence support the verdict convicting Martin of felony assault?

¶50 A person commits the offense of felony assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon. *See* § 45-5-202(2)(b), MCA (1997). Martin contends insufficient evidence supports the verdict on this charge because the State did not establish that he purposely or knowingly intended to create an apprehension of serious bodily injury in Missoula County Sheriff's Deputy Pat Turner (Turner).

¶51 The felony assault charge was based on events occurring immediately before Martin's apprehension behind the plywood in the alley. Turner had followed Martin out the front door of the bakery and into the alley, where Martin entered a small enclosure boarded up with plywood. The enclosure had a hole in it about 20 inches square and, as Turner stooped down to look through the hole, Martin looked out the hole directly at him. Recognizing Martin as the man he had chased out of the bakery, Turner identified himself and yelled at Martin to drop the gun and show his hands. Martin looked out twice more during this time.

¶52 Turner testified he then saw a gun appear in the hole in the plywood.

> [T]he gun was being held firmly. . . . As I continued to watch, the gun then began to turn, and the head of the individual appeared, the person looked directly at me, and the gun turned and pointed directly at me.

Thinking he was going to be fired on or, in his words, that there was a bullet "already on its way" to him, Turner fired a shot. Martin finally disappeared from view and threw a gun out through the hole in the plywood.

¶53 Martin testified that he did not intend to make Turner think he was going to shoot Turner. He argues his mental state, not Turner's perception of it, controls as to the "knowingly" or "purposely" element of felony assault.

¶54 Martin is correct in part. The "knowingly" or "purposely" element of felony assault is controlled by his, not Turner's mental state, but that mental state element goes to the defendant's actions, not to whether those actions caused reasonable apprehension of serious bodily injury in another. *See State v. Matt* (1991), 249 Mont. 136, 146, 814 P.2d 52, 58. Treating the evidence on that point in the light most favorable to the State, we conclude it was sufficient for the jury to find that Martin saw Turner and deliberately aimed a pistol at him.

¶55 As to the separate element of causing reasonable apprehension, the unambiguous testimony of the victim may constitute sufficient evidence to establish reasonable apprehension of serious bodily injury. *See State v. Hagberg* (1996), 277 Mont. 33, 39-40, 920 P.2d 86, 89-90; *Matt*, 249 Mont. at 146, 814 P.2d at 58. Given the circumstances of the pursuit and the shooting of Heinle, of which both Turner and

Martin were aware, and the way the gun was pointed at Turner, the evidence was sufficient for the jury to find Turner felt reasonable apprehension of serious bodily injury.

¶56 On this record and viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of the offense of felony assault beyond a reasonable doubt. We hold sufficient evidence supports the verdict convicting Martin of felony assault.

¶57 7. Does sufficient evidence support the verdict convicting Martin of felony theft?

¶58 Martin was found guilty of the offense of felony theft of property for exerting unauthorized control over Heinle's police department weapon, a .40 caliber Baretta Model 96 pistol. The applicable felony theft statute, § 45-6-301(7)(b), MCA (1997), defines felony theft as theft of property "exceeding $500 in value." Martin contends the State failed to present evidence that Heinle's pistol exceeded $500 in value.

¶59 The Missoula City Police Chief presented the only evidence on the value of Heinle's pistol. He testified, "I don't have a clue what the market value of this particular weapon would be," and went on to explain that, if an officer lost a weapon, the department would buy a replacement weapon from the manufacturer. He estimated that to replace a weapon like Heinle's would cost about $645.

¶60 In a felony theft case, the value of the property taken is an essential element which must be proven beyond a reasonable doubt. *State v. Sunday* (1980), 187 Mont. 292, 300, 609 P.2d 1188, 1193. Section 45-2-101(76)(a), MCA, provides:

> "Value" means the market value of the property at the time and place of the crime, or, if the market value cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime.

Accordingly, evidence of replacement value of stolen property is to be considered only when the market value "cannot be satisfactorily ascertained."

¶61 In this case, the State presented neither evidence of the market value of the pistol nor evidence that the market value could not be satisfactorily ascertained. Instead, it relied solely on evidence of the replacement value of the weapon to meet its burden of proof. We conclude that a rational finder of fact could not have found the essential elements of felony theft, as defined by statute, beyond a reasonable doubt. Therefore, we hold insufficient evidence supports the verdict convicting Martin of felony theft.

¶62 8. Did the prosecutor commit misconduct during closing argument and, if so, did the misconduct deprive Martin of a fair trial?

¶63 Prosecutorial misconduct is measured by reference to established norms of professional conduct. *State v. Duffy,* 2000 MT 186, ¶ 35, 300 Mont. 381, ¶ 35, 6 P.3d 453, ¶ 35, *citing Everroad v. Indiana* (1991), 571 N.E.2d 1240, 1244. To establish that misconduct justifies reversal of a conviction, the

defendant must show that the alleged prosecutorial misconduct violated his or her substantial rights. *Duffy*, ¶ 35, *citing State v. Soraich*, 1999 MT 87, ¶ 20, 294 Mont. 175, ¶ 20, 979 P.2d 206, ¶ 20. We will not presume prejudice from charges of prosecutorial misconduct. *Soraich*, ¶ 20.

¶64 In this case, the prosecutor remarked in his rebuttal closing argument,

> Jimmy Martin doesn't have to face the death penalty in this case. It means that he can argue, regardless of what he's convicted of here, that the Judge can give him whatever sentence falls within the Judge's power to sentence in this case ranging from probation to life in prison.

He will always be able to go over and give his mother a hug. He will always be able to sit up straight.

At that point, defense counsel objected to these remarks as prosecutorial misconduct and the District Court overruled the objection. Martin asserts on appeal that the remarks constituted prosecutorial misconduct and deprived him of a fair trial.

¶65 Martin points out that this Court has held it prejudicial error for a jury to be instructed about sentencing possibilities. In *State v. Zuidema* (1971), 157 Mont. 367, 373, 485 P.2d 952, 955, we were persuaded by the argument that an instruction on the possible sentences facing the defendant "is prejudicial in that it intimates to the jury the impact of a jury verdict of guilty could be lessened by the court's imposition of a light sentence." Martin maintains that if it is improper to instruct the jury on possible sentences, then it also is improper for the prosecutor to so inform the jury in closing argument. We agree.

¶66 Sentencing is solely the duty of the trial court and the jury's verdict should not be influenced in any way by sentencing considerations. *State v. Stewart,* 2000 MT 379, ¶ 44, 303 Mont. 507, ¶ 44, 16 P.3d 391, ¶ 44, *citing State v. Brodniak* (1986), 221 Mont. 212, 226, 718 P.2d 322, 332. Therefore, the prosecutor's comments relating to sentencing constituted misconduct.

¶67 We also must consider, however, whether this prosecutorial misconduct prejudiced Martin's substantial rights. The State points out that during her closing argument, Martin's defense counsel made the following remarks:

> Ladies and gentlemen, this whole thing has been a tragedy. We all feel, as human beings, for Bob Heinle. I mean, any one of us would turn back the clock, make this be different if we could only do this. None of us are standing here to minimize what happened. I'm not. Jimmy Martin's not. His family's not. We all share the profound sadness and grief in this case.
>
> But, as jurors, you have to look at the facts of the case. You cannot--you cannot only see the tragedy of Bob Heinle.

Defense counsel then went on to caution the jury to decide the case on the facts, not on sympathy, passion, or public opinion. The State contends that the remarks about which Martin now complains in the prosecution's rebuttal closing were made in response to the above remarks by defense counsel.

¶68 Martin asserts the prosecutor raised the subject of the judge's sentencing discretion in order to influence the jury to find him guilty of all the greater felony offenses rather than any of the lesser included offenses, thus making a light sentence unlikely. However, we have determined that there was sufficient evidence to support the jury's guilty verdicts. Having reviewed the record, and in light of all the surrounding circumstances, including the context in which the remarks were made, we hold that Martin has not established prejudice resulting from the sentencing-related remark by the prosecutor during rebuttal closing argument.

¶69 Affirmed in part and reversed as to the felony theft conviction.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ JEFFREY H. LANGTON

The Honorable Jeffrey H. Langton,

District Court Judge, sitting for the

Honorable J. A. Turnage, now retired

Justice W. William Leaphart, concurring in part and dissenting in part.

¶ 70 I concur with the Court's resolution of issues one, two, three, six, seven and eight. For the following reasons, I dissent as to issues four and five.

¶ 71 The majority opinion finds Officer Heinle's words of "stop" and "halt" sufficient not only to "assert his authority with intention to effect an arrest," but also sufficient to constitute "restraint of the person arrested." While we have broadly defined "restraint" to include constructive restraint, such as restraint by oral statement of arrest without any physical contact, we still require that an officer adequately communicate the fact of arrest to a person whom the officer intends to restrain. I do not agree with the majority that if an officer intends to arrest and restrain a person, saying "stop" constitutes an oral

statement of arrest and restraint.

¶ 72 In both *Thornton* and *Widenhofer*, we held that the officers had constructively restrained the defendants when the officers told the defendants they were "under arrest." While I agree that an oral statement of arrest suffices to place a defendant under restraint, I do not believe that "stop" or "halt" are the functional equivalents for the purpose of placing someone under restraint. In *Thornton*, we broadened the definition of restraint, but the majority rule today allows an officer to claim he or she has arrested and restrained a person if the officer so much as says "stop." Without restraint, a person has nothing from which to escape and cannot be convicted of escape. Because I do not agree that Martin was restrained, I would reverse the escape conviction.

¶ 73 Martin's aggravated burglary conviction was based on the contention that he entered the premises with the intent to commit the offense of escape. Because I would reverse the escape conviction, the conviction for aggravated burglary would also fail.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler and the Honorable Thomas M. McKittrick, concurring in part and dissenting in part:

We concur in the foregoing concurring and dissenting opinion of Justice Leaphart.

/S/ TERRY N. TRIEWEILER

/S/ THOMAS M. McKITTRICK

Honorable Thomas M. McKittrick, District

Judge, sitting for the Honorable William E. Hunt, Sr., now retired