

DA 11-0613

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 86

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

MICHAEL TODD BIRTHMARK,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC-2010-33
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade M. Zolynski, Chief Appellate Defender; Kristen L. Larson,
Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant
Attorney General, Helena, Montana

                Nickolas Murnion, Valley County Attorney; C. David Gorton, Deputy
County Attorney, Glasgow, Montana

                        Submitted on Briefs:  February 13, 2013
                                    Decided:  April 9, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Michael Todd Birthmark appeals from his conviction of the offense of Partner or Family Member Assault (PFMA), a felony, after a jury trial on June 21, 2011. We affirm the conviction and remand for correction of the written judgment.

¶2      Birthmark presents the following issues for review:

¶3      Issue One: Whether Birthmark's attorney provided ineffective assistance of counsel by failing to object to the mental state instructions given at trial.

¶4      Issue Two: Whether this Court should exercise plain error review as to whether the District Court properly instructed the jury as to the mental state required to convict for PFMA.

¶5      Issue Three: Whether the written judgment should be corrected.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6      In November 2010 Birthmark visited Glasgow, Montana, and stayed at the house shared by his mother, brother and sister. Late on the night of November 16 Birthmark and his sister went to a party at his aunt's nearby house. He got into an argument with someone at the party and at about 1:30 a.m. returned to his mother's house angry and intoxicated. When he arrived, his brother was awake and watching TV, while his mother was asleep. Birthmark was loud enough that he woke his mother and she came into the living room. Birthmark then began staring at his mother and brother, and called them "inbreds" and snitches. He grabbed a piece of lumber and said he was going to "bash [their] heads in;" that

he was going to slice their necks and kill them; and that he would do the same to the people at the party. This conduct went on for some time.

¶7 When Birthmark left the living room for the kitchen, saying he was going to find a knife, his mother left the house and called 911. Glasgow Police Officer Weber responded and found Birthmark's mother outside the house. She was upset, crying and "scared to death." Weber saw Birthmark's brother coming out of the house with Birthmark close behind, but when Birthmark saw Weber he quickly went back inside. Birthmark's brother was concerned for his mother and warned Weber that Birthmark had a knife. Birthmark came out of the house at Weber's request without the piece of lumber or a knife. Weber observed that Birthmark was intoxicated and "worked up."

¶8 The State charged Birthmark with PFMA in violation of § 45-5-206(1)(c), MCA, for causing reasonable apprehension of bodily injury by his mother and brother. The charge was his third or subsequent such offense and was therefore a felony, § 45-5-206(3)(iv), MCA. At trial, Birthmark testified that he had been "jumped" by people at the party; that he was concerned for his sister who was at the party; and that his anger displayed at his mother's house was not directed at his mother and brother but was directed toward the people at the party. Birthmark testified that his mother and brother "inferred . . . or assumed" that his threats were directed at them.

¶9 At trial, Birthmark's attorney did not offer any proposed jury instructions, and stated that he had no objection to the instructions proposed by the State. The jury convicted Birthmark of PFMA and the District Court sentenced him to the Department of Corrections

for four years with one year suspended and with credit for 273 days served. Birthmark appeals and requests that this Court undertake plain error review of the jury instruction issue.

## STANDARD OF REVIEW

¶10 This Court reviews issues arising from a district court's decisions on jury instructions for abuse of discretion. *State v. Gerstner*, 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 866. The inquiry, viewing the instructions as a whole, is whether the district court fully and fairly instructed the jury on the applicable law. *State v. Dethman*, 2010 MT 268, ¶ 12, 358 Mont. 384, 245 P.3d 30. Claims of ineffective assistance of counsel are mixed questions of fact and law that this Court reviews de novo. *State v. Mitchell*, 2012 MT 227, ¶ 11, 366 Mont. 379, 286 P.3d 1196.

¶11 Under plain error review, this Court may review errors not objected to at trial. Plain error review may occur under § 46-20-701(2), MCA, or as a matter of discretion under this Court's inherent common law powers. *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1995). Plain error review is used sparingly and only in situations that implicate a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *State v. Main*, 2011 MT 123, ¶ 53, 360 Mont. 470, 255 P.3d 1240. The initial burden on a defendant seeking plain error review is to demonstrate that there was an error at trial. *State v. Mitchell*, 2012 MT 227, ¶ 13, 366 Mont. 379, 286 P.3d 1196.

## DISCUSSION

4

¶12    Issue One: Whether Birthmark's attorney provided ineffective assistance of counsel by failing to object to the mental state instructions given at trial.

¶13    Birthmark contends that his trial attorney provided ineffective assistance of counsel by not objecting to the instructions given by the District Court. To prevail on an IAC claim the defendant must establish that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Baca v. State,* 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948; *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052. A defendant must establish both of these factors in order to establish a claim of ineffective assistance of counsel. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861.

¶14    Birthmark was charged with PFMA under § 45-5-206(1)(c), MCA, which provides that a person commits PFMA if he "purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member." "Purposely" is defined in § 45-2-101(65), MCA, and "knowingly" is defined in § 45-2-101(35), MCA. The District Court instructed the jury that "[a] person acts purposely when it is his conscious object to engage in conduct of that nature," and, in a separate instruction, that "[a] person acts knowingly when the person is aware of his or her conduct." The District Court also instructed the jury that

> Purpose and knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the Defendant's state of mind, including his purpose and knowledge, from the Defendant's acts and all other facts and circumstances in evidence which indicate his state of mind.

Birthmark contends that the District Court's definitions of "purposely" and "knowingly" were improper because they were "conduct-based" definitions and not "result-based"

5

definitions.

¶15    Birthmark did not materially contest his actions at his mother's house:  staring at his brother and mother, using loud language, name-calling, picking up a large stick, talking about finding a knife, threatening to bash their heads in and to slit their throats. His defense was that he did not intend these actions to cause his brother and mother to have a reasonable apprehension of bodily injury.  He contends that the jury should have been instructed that the State was required to prove that he intended his actions to cause his mother and brother to have reasonable apprehension of bodily injury.

¶16    Birthmark's subjective intent while he undertook his actions was not the issue in the PFMA charge.  It is well established that under the "reasonable apprehension" portion of the PFMA statute, the standard for determining whether there has been an offense is whether a reasonable person under similar circumstances as the victim would have a reasonable apprehension of bodily injury. *State v. Vukasin*, 2003 MT 230, ¶ 19, 317 Mont. 204, 75 P.3d 1284; *State v. McCarthy*, 1999 MT 99, ¶ 27, 294 Mont. 270, 991 P.2d 629; *State v. Martel*, 273 Mont. 143, 150, 902 P.2d 14, 19 (1995).  "The standard is objective, asking whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *State v. Finley*, 2011 MT 89, ¶ 29, 360 Mont. 173, 252 P.3d 199.  The only mental state required to convict is that the defendant have a "conscious object to engage in [the] conduct" or that he be "aware of his . . . conduct"  as defined in § 45-2-101(35) and (65),

6

MCA.[1]  Those conduct definitions were in the instructions that the District Court gave to the jury here.

¶17    In *State v. Martin*, 2001 MT 83, 305 Mont. 123, 23 P.3d 216, Martin was charged with a number of offenses following an attempt to cash a forged check at a bank.  He was charged with felony assault under § 45-5-202(2)(b), MCA, for purposely or knowingly causing reasonable apprehension of seriously bodily injury after pointing a pistol at a pursuing officer.  Martin testified that he did not intend to cause the officer to reasonably apprehend serious bodily injury, and argued on appeal that his mental state, and not the perception of the officer, determined the mental state required for conviction. This Court disagreed, holding that the only mental state required as to Martin was proof that he acted purposely or knowingly.   The separate element of the offense—causing reasonable apprehension of serious bodily injury—is established by the perception of the victim. *Martin*, ¶¶ 54-55.  See also *State v. Hagberg*, 277 Mont. 33, 39-40, 920 P.2d 86, 89 (1996) (victim's testimony of reasonable apprehension of serious bodily injury satisfies element of assault); *State v. Matt*, 249 Mont. 136, 146, 814 P.2d 52, 58 (1991) (*overruled on other grounds*, *State v. District Court*, 2010 MT 263, ¶ 3, 358 Mont. 325, 246 P.3d 415) (in felony assault charge the defendant must act purposely or knowingly, and the reasonable apprehension element is proved by the victim's perceptions).

---

[1] Compare, § 45-8-213(1)(a), MCA, which establishes the offense of violating privacy in communications, and which requires that the State prove that the defendant acted with a "purpose to terrify, intimidate, threaten, harass, annoy or offend . . . ." *State v. Dugan*, 2013 MT 38, ¶ 50, 369 Mont. 39, __ P.3d __.  There is no such requirement in § 45-5-206(1)(c), MCA.

¶18    The District Court properly instructed the jury in the applicable law on the mental state for the PFMA offense. Birthmark was not entitled to an instruction that the jury be required to find that he intended to cause his mother and brother to have reasonable apprehension of bodily injury. If such an instruction had been offered the District Court could have properly refused to give it.

¶19    The District Court's instructions were proper in this case. To establish deficient performance, an appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Mitchell*, ¶ 21. The record here clearly demonstrates that Birthmark has not met his burden to establish deficient performance, and his attorney's assistance was therefore not ineffective.

¶20    Issue Two: Whether this Court should exercise plain error review of whether the District Court properly instructed the jury as to the mental state required to convict for PFMA.

¶21    Birthmark requests that this Court undertake common law plain error review of the instruction issue, and does not rely upon § 46-20-701(2), MCA, the statutory provision on plain error. The threshold requirement for any plain error review of matters not objected to at trial is that there be error. As discussed above, the instructions given by the District Court properly defined "purposely" and "knowingly" for purposes of the PFMA charge against Birthmark, and there was no error. Without error there is no reason for further review of the instruction issue.

¶22    Issue Three: Whether the written judgment should be corrected.

¶23    After Birthmark's opening brief was filed in this appeal, his attorney contacted the State's attorney about an error in the District Court's written judgment. The error was that the written judgment imposed terms and conditions to apply during any term of parole or conditional release. The State concedes that the District Court may not impose conditions of parole or conditional release, citing *State v. Burch*, 2008 MT 118, ¶¶ 24-26, 342 Mont. 499, 182 P.3d 66, and that the written judgment should be amended. The State also agrees that this issue should be addressed in this appeal.

¶24    Accordingly, this matter is remanded to the District Court for the sole purpose of removing language in the August 22, 2011, judgment, page 4, line 22, that imposes terms and conditions of parole or conditional release.

¶25    This matter is remanded to the District Court for purposes of correcting the written judgment as discussed above, but is otherwise affirmed.

                                        /S/ MIKE McGRATH


We concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE