FILED

09/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0725

DA 23-0725

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 222N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BOBBY FRANCIS LOWRY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2022-131
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James Murnion, Murnion Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Selene Koepke, Assistant Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Ann Beth Penner, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  August 20, 2025

Decided:  September 30, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Bobby Francis Lowry (Lowry) appeals from the August 14, 2023 Order of the First Judicial District Court, Lewis and Clark County, denying his motion to dismiss for lack of speedy trial. He additionally asserts his right to a fair and impartial trial were violated by comments made in the prosecution's closing argument. We affirm.

¶3 Lowry assaulted his wife, L.L., on October 6, 2020. L.L. disclosed the assault to law enforcement over one year later. The State charged Lowry with Partner or Family Member Assault (PFMA) under § 45-5-206(1)(a), MCA, on March 25, 2022. Lowry made his initial appearance in Justice Court on the PFMA charge on March 7, 2022[1]. Lowry failed to appear at his arraignment on March 29, 2022. The first trial date was set for September 26, 2022. Lowry's public defender moved to withdraw as counsel on July 28, 2022, after discovering a conflict. Lowry was subsequently assigned new counsel on August 31, 2022, and trial was continued to March 13, 2023. Lowry filed a motion to continue trial set for March 13, 2023, requesting an additional three months to consult with counsel and obtain more evidence from the State. The District Court granted the motion

---

[1] The speed trial clock begins once the defendant is accused. *State v. Ariegwe*, 2007 MT 204, ¶ 113, 338 Mont. 442, 167 P.3d 815.

2

and reset trial for August 28, 2023. Following his motion to continue, Lowry filed a waiver of speedy trial on March 6, 2023. Lowry filed his motion to dismiss for lack of speedy trial on August 9, 2023, alleging he endured prejudice due to lost video evidence along with stress and anxiety from the case. A total of 539 days elapsed from Lowry's initial appearance on March 7, 2022, to his final trial date of August 28, 2023.

¶4 The District Court denied the motion to dismiss for lack of speedy trial and a two-day trial commenced on August 28, 2023. In the State's rebuttal closing, the prosecutor stated, "[Lowry] is guilty, in the State's eyes, of partner/family member assault. Please find him guilty." The jury found Lowry guilty on August 29, 2023. He was sentenced the same day to the Montana State Prison for five years.

¶5 On appeal, Lowry argues the Court should conclude his right to a speedy trial was violated and dismiss his PFMA charge. Alternatively, Lowry argues the Court should exercise plain error review of the alleged prosecutorial misconduct and grant him a new trial.

**Lowry's Speedy Trial Claim**

¶6 We turn first to Lowry's argument that he was denied his right to a speedy trial.

¶7 "A criminal defendant's right to a speedy trial is a fundamental constitutional right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution." *State v. Zimmerman*, 2014 MT 173, ¶ 12, 375 Mont. 374, 328 P.3d 1132 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442,167 P.3d 815; *State v. Stops*, 2013 MT 131, ¶ 18, 370 Mont. 226, 301 P.3d 811). Whether a speedy trial violation occurred is a question of constitutional law. *Ariegwe*,

¶ 119 (citing *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, 965 P.2d 866; *State v. Spang*, 2007 MT 54, ¶ 7, 336 Mont. 184, 153 P.3d 646). A trial court's conclusions of law are reviewed de novo "to determine whether the court's interpretation and application of the law are correct." *Ariegwe*, ¶ 119 (citing *Bruce*, ¶ 18; *Spang*, ¶¶ 7, 32). Factual findings underlying a speedy trial analysis are reviewed for clear error. *Ariegwe*, ¶ 119 (citing *Spang*, ¶ 7).

¶8      A balancing test is used to determine whether a violation of the right has occurred. *Zimmerman*, ¶ 12. Four factors are taken "into consideration: (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused as a result of the delay." *Zimmerman*, ¶ 12. A single factor is not dispositive and each factor must be considered in light of other circumstances. *Zimmerman*, ¶ 12 (citing *Ariegwe*, ¶ 112).

**Factor One: The Length of the Delay**

¶9      The District Court calculated that there was a 4-day overage of the 200-day speedy trial threshold. The District Court only identified the first delay between Lowry's initial appearance and first trial date reasoning that Lowry was responsible for any subsequent delay. However, a speedy trial analysis requires a court to assess the entire period of time between the day a defendant is accused to the defendant's trial date. *Ariegwe,* ¶ 113. Although the District Court erred in its calculation of the length of delay, we agree that the speedy trial clock was triggered.

¶10      "[T]he presumption that pretrial delay has prejudiced the accused exists as of the 200-day trigger date for speedy trial analysis." *Ariegwe*, ¶¶ 56, 113. The presumption of

4

prejudice escalates over time. *Ariegwe*, ¶¶ 56, 113. A long delay weighs heavily against the State absent a showing of no prejudice against the accused. *State v. Flynn*, 2024 MT 236, ¶ 26, 418 Mont. 331, 557 P.3d 934 (citing *Ariegwe*, ¶¶ 56, 113). Under factor one, the second inquiry is "the extent to which the delay stretches beyond the trigger date." *Ariegwe*, ¶ 38.

¶11 We must first determine whether the time between Lowry's initial appearance and the scheduled trial date is over the 200-day threshold, which triggers a speedy trial analysis. *Ariegwe*, ¶ 121. Lowry initially appeared on March 7, 2022. Lowry's first trial date was set for September 26, 2022. The District Court determined this amount to be 204 days. Although 204 days triggers a speedy trial analysis, the District Court conflated the length of delay with factor two, the reasons for delay.

¶12 Here, Lowry and the State agree that the time began running with Lowry's initial appearance on March 7, 2022. Lowry's final date for trial was set for August 28, 2023, a total delay of 539 days, 339 days beyond the 200-day threshold. Accordingly, the speedy trial analysis is triggered by this 339-day delay.

**Factor Two: Reasons for Delay**

¶13 Under factor two, the Court must identify "each period of delay in bringing the accused to trial, attributing each period of delay to the appropriate party." *Flynn*, ¶ 27 (citing *Ariegwe*, ¶ 108). An institutional delay, such as an overcrowded court docket, weighs less heavily against the State as opposed to bad-faith delays. *Ariegwe*, ¶ 108. Delays caused by the defendant will be attributable to him. *State v. Kirn*, 2023 MT 98,

¶ 24, 412 Mont. 309, 530 P.3d 1 (citing *State v. Heath*, 2018 MT 318, ¶ 18, 394 Mont. 41, 432 P.3d 141).

¶14 Here, there are three periods of delay: (1) a 203-day[2] delay from Lowry's initial appearance on March 7, 2022, until the original trial date of September 26, 2022; (2) a 168-day delay from the original trial date of September 26, 2022, until the second trial date of March 13, 2023; and (3) a 168-day delay from the second trial date of March 13, 2023, until the final trial date of August 28, 2023.

¶15 The first delay of 203 days between Lowry's initial appearance and the first trial date of September 26, 2022, resulted from institutional delays common to a court's criminal docket. Some time is going to transpire due to institutional delays beyond the control of the prosecutor and the court, which is attributable, for example, to the District Court's calendar and requirements for discovery and pretrial motions. *Ariegwe*, ¶¶ 51, 125. We attribute these 203 days to the State as institutional delay. While we attribute these days to the State, we weigh them less heavily because they resulted from institutional delay.

¶16 The second delay of 168 days between the first trial date and the second trial date of March 13, 2023, occurred due to Lowry's motion to continue after his counsel moved to withdraw. Regardless of whether a defendant signed a speedy trial waiver, a delay caused by the defendant will be attributed to him. *Stops*, ¶ 30 (citing *State v. Couture*, 2010 MT 201, ¶ 78 n.5, 357 Mont. 398, 240 P.3d 987). Delays that are not institutional carry

---

[2] There is a 1-day discrepancy in the first delay between this Court's computation and the parties', which we deem to be immaterial.

more weight. *State v. Burnett*, 2022 MT 10, ¶ 27, 407 Mont. 189, 502 P.3d 703. We attribute these 168 days to Lowry.

¶17 The third delay of 168 days between the second trial date and the third trial date of August 28, 2023, resulted from a motion to continue by Lowry. The Court declines to split the attribution of this delay between the parties. Lowry consented to the continuance and filed a speedy trial waiver. Additionally, the District Court granting more time than requested by Lowry for the continuance does not result in time being attributed to the State. We attribute these 168 days to Lowry.

¶18 Of the total 539 days between Lowry's initial appearance and final trial date of August 28, 2023, we attribute 336 days of the delay to Lowry and 203 days to the State. The delays caused by Lowry stemmed from his own motions to continue. The 203 days attributable to the State are weighed less heavily because the delay arose solely from institutional delay. Accordingly, this factor weighs in favor of the State.

**Factor Three: The Accused's Responses to the Delays**

¶19 The Court must examine the totality of the accused's responses to delays. *Ariegwe*, ¶ 110. Some considerations include "the timeliness, persistence, and sincerity of the objections," in addition to the pretrial conduct of the accused. *Ariegwe,* ¶ 110. The response to the delays can impact the weight the Court assigns to the other factors in its balancing test, including acquiescence in and objections to the delays. *Ariegwe*, ¶ 110. In *Ariegwe*, a speedy trial motion was not filed until the 373rd day of delay in the case. *Ariegwe*, ¶ 140. This Court opined that "waiting this long past the 200-day trigger date to assert the right would suggest that he was not particularly interested in being brought to

trial sooner." *Ariegwe*, ¶ 140. "The totality of the accused's responses to the delay is indicative of whether he actually wanted a speedy trial and provides guidance in balancing the other factors." *Zimmerman*, ¶ 22 (citing *Couture*, ¶ 50).

¶20 Here, Lowry filed a speedy trial motion on August 9, 2023, just three weeks before his final trial date of August 28, 2023. Pursuant to Lowry's motion to continue, the District Court reset his trial date on February 22, 2023. Lowry did not file a speedy trial motion until 502 days after he was charged. Notably, Lowry filed a speedy trial waiver on March 6, 2023, weeks after receiving the new trial date and prior to filing the speedy trial motion. Lowry did not invoke his right to a speedy trial; he instead initially acquiesced to the delay. Under these circumstances, Lowry's responses to the delay do not indicate he wanted a speedy trial.

**Factor Four: Prejudice to the Accused**

¶21 The Court must assess "whether the accused has been prejudiced by the delay in light of the interests that the speedy trial right was designed to protect." *Ariegwe*, ¶ 111. These interests include preventing oppressive pretrial incarceration, minimizing the anxiety of an unresolved criminal charge, and limiting the chance of impairment to the accused's effective defense. *Ariegwe*, ¶ 111.

¶22 A defendant incarcerated for another matter while awaiting trial is a consideration in determining whether incarceration was oppressive, but it is not dispositive. *Ariegwe*, ¶ 92 (citing *State v. Highpine*, 2000 MT 368, ¶ 26, 303 Mont. 422, 15 P.3d 938; *Smith v. Hooey*, 393 U.S. 374, 378, 89 S. Ct. 575, 577 (1969)). "A certain amount of anxiety and concern is inherent in being accused of a crime." *Zimmerman*, ¶ 32. If the accused cannot

show prejudice to their defense because of delay and "the government had pursued the accused with reasonable diligence," a speedy trial claim generally fails. *Ariegwe*, ¶ 60 (citing *Doggett v. United States*, 505 U.S. 647, 656, 112 S. Ct. 2686, 2693 (1992)). The defendant's ability to gather evidence while subject to pretrial incarceration is a consideration in analyzing the ability to present an effective defense. *Ariegwe*, ¶ 113. "Impairment of one's defense may [] be the most difficult form of prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." *State v. LaGree*, 2007 MT 65, ¶ 30, 336 Mont. 375, 154 P.3d 615 (citing *State v. Blair*, 2004 MT 356, ¶ 32, 324 Mont. 444, 103 P.3d 538).

¶23 Here, Lowry does not argue that he endured oppressive pretrial incarceration. Lowry instead argues, however, that he experienced stress and anxiety because of the proceedings. Lowry stated, "[t]his whole stuff is stressful . . . [the accusations] make you very anxious." Lowry's position proves unavailing. Lowry fails to show any indicia of stress and anxiety extending past the inherent stress and anxiety of being accused of a crime.

¶24 As to the impairment of his defense, Lowry cites both pre-indictment and post-indictment, pre-trial delay as prejudicing his ability to craft his defense. Lowry testified to lost video footage due to the length of time between the allegation of the assault and the time between the allegation and him being charged. Lowry's argument that video evidence was lost prior to being charged, which implies his speedy trial right attaches prior to initiation of the prosecution, is incorrect. *See State v. Betterman*, 2015 MT 39, ¶ 25, 378 Mont. 182, 342 P.3d 971 (citing *United States v. Lovasco*, 431 U.S. 783, 788, 97 S. Ct.

9

2044, 2048 (1977) (the constitutional right to speedy trial does not extend to pre-indictment delay)).

¶25     Lowry also argued that due to pre-trial incarceration, he lost his ability to gather exculpatory evidence. In *State v. Rose*, the defendant argued the pre-trial delay "damaged his ability to present an effective defense because cell phone records disappeared." *State v. Rose*, 2009 MT 4, ¶ 80, 348 Mont. 291, 202 P.3d 749 (abrogated on other grounds). The State showed, and this Court agreed, that Rose had the ability to consult with his attorneys to advise them where to collect evidence. *Rose*, ¶ 81. Here, Lowry was released on his own recognizance at his initial appearance but was detained during this matter for other pending cases. Like *Rose*, Lowry had the ability, even while incarcerated, to consult and advise his attorney about the collection of evidence. Lowry fails to provide evidence that his defense was impaired by the delay, specifically while incarcerated. This factor weighs in favor of the State.

**Balancing the Factors**

¶26     The Court determines whether a speedy trial violation occurred by balancing each of the factors. *Ariegwe*, ¶ 112. "[T]he factors are related and must be considered together with such other circumstances as may be relevant." *Ariegwe*, ¶ 112. Here, the length of delay exceeding 200 days weighs in Lowry's favor and creates a presumption of prejudice. The reasons for delay weigh in favor of the State because the State's single delay was institutional. Lowry's response, or lack thereof, to the delays do not indicate an interest in having a speedy trial, especially considering Lowry's speedy trial waiver that was filed after the motion to continue and after receiving notice of the final trial date. Lowry has

10

failed to exhibit he suffered prejudice from the delay. Lowry does not argue prejudice from oppressive incarceration and has failed to demonstrate extreme anxiety and stress due to the delay. Finally, Lowry has not shown any impairment to his defense due to the delay. Balancing these factors, we conclude the District Court correctly denied Lowry's motion to dismiss for lack of speedy trial.

**Prosecutorial Misconduct Allegation**

¶27 We turn next to Lowry's claim of prosecutorial misconduct. Defense counsel did not object to the State's closing argument. Prosecutorial misconduct allegations relating to a prosecutor's statement not objected to at trial are typically not addressed by this Court. *State v. Palafox*, 2023 MT 26, ¶ 17, 411 Mont. 233, 524 P.3d 461 (citing *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506). Even if no objection is made, however, this Court "may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights . . . under plain error review." *Palafox*, ¶ 17 (citing *State v. Lackman*, 2017 MT 127, ¶ 9, 387 Mont. 459, 395 P.3d 477). Plain error review is used on a case-by-case basis and is exercised sparingly. *Palafox*, ¶ 17 (citing *Lackman*, ¶ 9).

¶28 "This Court will not presume prejudice from charges of prosecutorial misconduct; rather, the defendant must show that the alleged prosecutorial misconduct violated the defendant's substantial rights." *State v. Roubideaux*, 2005 MT 324, ¶ 11, 329 Mont. 521, 125 P.3d 1114 (citing *State v. Martin*, 2001 MT 83, ¶ 63, 305 Mont. 123, 23 P.3d 216). Statements made during closing argument are considered "in the context of the entire argument." *Aker*, ¶ 24 (quoting *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213). Prosecutors may not offer personal opinions on the credibility of the

accused but may comment on the evidence presented. *State v. Lacey*, 2012 MT 52, ¶ 17, 364 Mont. 291, 272 P.3d 1288 (citing *State v. Green*, 2009 MT 114, ¶ 33, 350 Mont. 141, 205 P.3d 798).

¶29 The prosecutor in *Lacey* urged the jury to "go back there and find Lacey guilty because, by God, he is." *Lacey*, ¶ 19. The Court found the prosecutor's closing argument, in its entirety, to be permissible and well supported. *Lacey*, ¶ 26. This Court declined to exercise plain error review due to the context of the prosecutor's statements. *Lacey*, ¶ 26. The prosecutor in *State v. Campbell* stated in his closing argument, "Look at the evidence, look at what we've shown. The inescapable conclusion, who done it? Jack Lee Campbell." *State v. Campbell*, 241 Mont. 323, 328, 787 P.2d 329, 332 (1990). The Court found the statement relied on the evidence at trial, as opposed to what the State believed, and decided it did not amount to reversible error. *Campbell*, 241 Mont. at 329, 787 P.2d at 333.

¶30 Here, the prosecutor stated:

> The State submits to you not to fall down that rabbit hole, not to fall for these smoke and mirrors. The State has given you the puzzle pieces to see that picture. . . .You have the puzzle piece that's been put together. [Lowry] is guilty, in the State's eyes, of partner/family member assault. Please find him guilty.

¶31 Lowry argues his right to a fair and impartial trial was implicated by the prosecutor's alleged improper comments; however, his reasoning is misplaced. Lowry cites to *State v. Musgrove*, where the prosecutor stated, "And after hearing all this testimony, I'm convinced that Musgrove is a liar and he is responsible." *State v. Musgrove*, 178 Mont. 162, 171, 582 P.2d 1246, 1252 (1978). Lowry next cites to *State v. Stringer*, where the prosecutor stated, "Mr. Stringer is the defendant. He[] is [the] one that's charged. He's

12

the one that committed the crimes." *State v. Stringer*, 271 Mont. 367, 380, 897 P.2d 1063, 1071 (1995).

¶32 The examples provided by Lowry are distinguishable from the facts of this case. In both *Musgrove* and *Stringer* prosecutors made commentary and conclusions not to be considered as evidence by a jury. Here, the prosecutor's reference to "puzzle pieces" suggests the jury look to the evidence, like *Campbell*. Considering the prosecutor's statement in the context of the entire closing argument, this Court declines to exercise plain error review.

¶33 We affirm the District Court's denial of Lowry's motion to dismiss for lack of speedy trial. Further, the Court declines to exercise plain error review of the prosecutor's closing statements because they did not violate Lowry's constitutional rights.

¶34 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶35 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE

13