Chief Justice Mike McGrath delivered the Opinion of the Court.
***44 ¶1 Brad M. Heath appeals from a March 27, 2017 Fifth Judicial District Court order denying his motion to dismiss for lack of speedy trial and from the admission of his blood alcohol concentration into evidence. We affirm.
¶2 We restate the issues on appeal as follows:
1. Did the District Court err when it denied Heath's motion to dismiss for lack of speedy trial?
2. Did the District Court err when it admitted Heath's blood alcohol concentration into evidence?
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Between the time Heath was arrested and charged and when the jury trial occurred, 811 days elapsed.
¶4 On April 10, 2015, Heath was arrested and incarcerated for driving under the influence of alcohol; he posted bond the same day. On April 17, 2015, the State filed an information *145 charging Heath with driving under the influence of alcohol, his fourth or subsequent offense, a felony in violation of § 61-8-401, MCA. Alternatively, the State charged Heath with operating a motor vehicle with a blood alcohol concentration ("BAC") of 0.08 or greater, his fourth or subsequent offense, a felony in violation of § 61-8-406(1)(a), MCA. On April 22, 2015, Heath appeared before the District Court and pleaded not guilty to both charges.
¶5 At the Omnibus Hearing on July 1, 2015, the District Court set Heath's case for trial on November 9 and 10, 2015. The final pretrial conference was set for October 13, 2015. However, on September 29, 2015, Heath filed a motion to continue the final pretrial conference and trial because he no longer intended to accept a pending plea offer and because he was awaiting the appointment of new counsel. The State did not oppose the motion. On October 8, 2015, the District Court entered an order continuing the trial to June 6, 2016, and the final pretrial conference to May 16, 2016. New counsel filed an appearance on October 16, 2015.
¶6 On May 10, 2016, Heath filed a second motion to continue the trial and final pretrial conference. Heath claimed that he needed additional time to prepare his defense, and asserted that his employment schedule conflicted with the trial setting. Heath represented to the District Court that the State would not oppose his motion if Heath agreed to file a waiver of speedy trial. Heath's motion stated, "a Waiver of Speedy Trial for the purposes of this continuance will be ***45 forthcoming." Heath did not file a subsequent document. The District Court granted Heath's motion to continue and the final pretrial conference and trial were rescheduled to August 30, 2016, and September 29, 2016, respectively.
¶7 On July 11, 2016, Heath's counsel filed a motion to withdraw, citing Heath's desire to proceed pro se. Heath eventually obtained new counsel.
¶8 On August 30, 2016, the same day as the final pretrial conference, Heath filed a motion to dismiss for lack of speedy trial. During the final pretrial conference, the District Court ordered that the State had until September 9, 2016, to respond to the motion, and that Heath had until September 16, 2016, to file his reply brief. In Heath's reply brief, filed on September 16, 2016, Heath requested a hearing on the motion to dismiss. On September 21, 2016, the District Court issued an order continuing trial and setting an evidentiary hearing on Heath's motion to dismiss. The evidentiary hearing was set for September 29, 2016, the same date that had previously been set for trial.
¶9 However, on September 23, 2016, Heath filed a motion to suppress and a second motion to dismiss based upon law enforcement's alleged unlawful seizure of his blood. On September 27, 2016, the District Court issued an order vacating the September 29, 2016 evidentiary hearing and reset a combined evidentiary hearing on both of Heath's pending motions for January 19, 2017. The District Court eventually denied both motions.
¶10 Following the trial, which was rescheduled for and took place on June 29, 2017, a jury found Heath guilty of driving under the influence of alcohol pursuant to § 61-8-401, MCA. The District Court committed Heath to the Department of Corrections for a thirteen-month placement in an appropriate correctional facility or program, with a recommendation for placement in the WATCh Program, in addition to a three-year suspended sentence.
STANDARD OF REVIEW
¶11 We review a district court's denial of a motion to dismiss for lack of speedy trial to determine whether the district court's findings of fact are clearly erroneous. State v. Ariegwe , 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. Whether factual circumstances establish a speedy trial violation presents a question of law. State v. Steigelman , 2013 MT 153, ¶ 10, 370 Mont. 352, 302 P.3d 396. We review de novo a district court's conclusion of law. Steigelman , ¶ 10. A district court's interpretation of a statute presents a conclusion of law which we review for correctness.
***46 State v. Allport , 2015 MT 349, ¶ 8, 382 Mont. 29, 363 P.3d 441.
*146 DISCUSSION
¶12 1. Did the District Court err when it denied Heath's motion to dismiss for lack of speedy trial?
¶13 Heath challenges his DUI conviction and argues that the District Court erred when it denied his motion to dismiss because his speedy trial rights had been violated.
¶14 The Sixth Amendment and the Fourteenth Amendment to the United States Constitution, and Article II, Section 24 of the Montana Constitution, guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI ; U.S. Const. amend. XIV ; Mont. Const. art. II, § 24 ; Steigelman , ¶ 12. In Montana, a court must balance four factors in considering a claim of denial of the right to speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused. Steigelman , ¶ 12. No single speedy trial factor is dispositive. Steigelman , ¶ 13. Rather, each factor's significance depends on the unique facts and circumstances of the case. Steigelman , ¶ 13. The speedy trial analysis is triggered only if the interval between accusation and trial is 200 days or more, irrespective of fault for the delay. Ariegwe , ¶ 107.
¶15 The speedy trial clock began when Heath was arrested on April 10, 2015, and continued until trial on June 29, 2017. That 811-day delay satisfies the 200-day threshold.
¶16 Under factor two, each period of delay is identified and attributed to the appropriate party. Ariegwe , ¶ 108. If a delay is not demonstrated to have been caused by the accused, or affirmatively waived by the accused, the delay is attributed to the State by default. Ariegwe , ¶ 108. The court then assigns weight to each period of delay based on the specific cause and motive for the delay. Ariegwe , ¶ 108. Institutional circumstances such as overcrowded dockets, etc., weigh less heavily against the State than do negligence or lack of diligence in bringing the accused to trial. Ariegwe , ¶ 108. Delay caused by the State's bad faith weighs heavily against it. Ariegwe , ¶ 108. Acceptable and unacceptable reasons for delay caused by the accused are weighed similarly. Ariegwe , ¶ 108. "The more delay caused by the State for 'unacceptable' reasons (e.g., lack of diligence or bad-faith delay), the more likely the accused's speedy trial right has been violated. Likewise, the more delay caused by the accused for such reasons (e.g., to avoid being brought to trial), the less likely the right has been violated." Ariegwe , ¶ 109. Because the primary burden to assure that cases are ***47 brought to trial rests with the courts and the prosecutors, the further the delay stretches beyond 200 days, the more compelling the State's justifications for the delay must be. Ariegwe , ¶ 72.
¶17 The District Court attributed each period of delay to the appropriate party.
¶18 Both parties agree that the District Court correctly attributed the first delay, from Heath's arrest on April 10, 2015, until the initial trial date of November 9, 2015, totaling 213 days, to the State as institutional delay. Heath asserts that the second delay, from the original trial date of November 9, 2015 to May 10, 2016, totaling 183 days, was improperly attributed to him. Heath contends that this period should be classified as institutional delay because although Heath agreed to the continuance to replace his public defender and prepare for trial, he did not request a seven-month continuance. Heath believed the continuance would result in a one-month delay. However, Heath testified that he followed his counsel's recommendations and, after learning of the seven-month delay, he did not express to his counsel that he did not want the trial date continued. "If the defendant caused a particular delay, it will be attributed to him. ..." State v. Couture, 2010 MT 201, ¶ 78 n.5, 357 Mont. 398, 240 P.3d 987. Here, Heath requested, and acquiesced in, the continuance. The District Court properly attributed the 183-day delay to him.
¶19 The District Court also attributed the third delay, totaling 134 days, from May 10, 2016, to September 21, 2016 (when the District Court continued trial again) to Heath. Heath requested the continuance, asserting that he needed additional time to prepare his defense and that his work schedule conflicted with the trial date. The *147 District Court remarked that Heath's continuance was "inexcusable" considering he waited until less than one month before trial to request the continuance, trial had already been delayed for seven months, and Heath's replacement counsel had appeared months earlier. Heath contends that this period should be attributed to the State because he never filed the waiver of speedy trial. While "a defendant cannot be forced to waive his right to be brought to trial promptly in order to exercise his right to prepare a defense," if a " 'defendant caused a particular delay, it will be attributed to him regardless of whether he signed a waiver for that period.' " State v. Stops , 2013 MT 131, ¶ 30, 370 Mont. 226, 301 P.3d 811 (quoting Couture , ¶ 78 ). Here, Heath's assurance that the waiver would be "forthcoming" is significant. Further, Heath testified that he requested the continuance because he prioritized his job over a speedy trial. When asked why he couldn't ***48 miss a day of work to attend trial, Heath responded: "It wasn't the one day I was worried about sir, it was in case of the worst-case scenario that I lost." This exchange illustrates that Heath was not being "forced to choose between work and a trial" as he claims. The District Court properly attributed this period to Heath.
¶20 The fourth period of delay, from September 21, 2016 to November 3, 2016, totaling forty-three days was also correctly attributed to Heath. Heath's change of counsel and his last-minute motion and hearing request caused the delay. "Delay directly attributable to the filing of a speedy trial motion less than thirty days before a scheduled trial date is attributable to the defendant. ..." Stops , ¶ 38.
¶21 The District Court attributed the final delay, totaling 238 days, from November 3, 2016 (the date the court reset the evidentiary hearing and trial), to June 29, 2017 (the date trial was held), to the State as institutional delay. This delay was a result of the "overcrowded docket and heavy caseload" and "unique logistical calendaring challenges" presented by the fact that an out-of-county judge was brought in to preside over the case. The District Court correctly characterized this delay as institutional.
¶22 In summary, the State is responsible for 451 days of institutional delay and Heath is responsible for the remaining 360 days of delay. Nothing in the record suggests that the State negligently or intentionally caused the delays.
¶23 Heath's responses to the delay, the third factor in the balancing test, weigh against Heath's motion to dismiss. Principally, the court must determine whether the accused demonstrated a sincere desire to be brought to trial promptly. Ariegwe , ¶ 81. Heath failed to assert his speedy trial right until July 29, 2016, more than a year after proceedings began, he waited until one month before trial to file a motion to dismiss for lack of speedy trial, he did not request a hearing on the motion until thirteen days before trial, he requested two continuances, and there was no evidence that Heath personally desired a speedy trial. Moreover, Heath's testimony that he was "more concerned about what was coming after [trial]" indicates that Heath did not wish to proceed to trial for fear of conviction. Heath's conduct is not indicative of a sincere desire for a speedy trial.
¶24 The final inquiry considers whether the accused was prejudiced by the delay, in light of the interests the speedy trial right protects: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the accused, and (iii) limiting the ***49 possibility that the defense will be impaired by the delay. Ariegwe , ¶ 88. The delay attributed to the State exceeded 200 days. Therefore, this Court requires less proof of prejudice from the defendant and a greater showing of lack of prejudice from the State. Steigelman , ¶ 21.
¶25 Because Heath bonded out the same day he was incarcerated, he did not suffer oppressive pretrial incarceration.
¶26 With respect to minimizing anxiety and concern of the accused, the focus is whether the pretrial delay "unduly prolonged the disruption of the accused's life or aggravated the accused's anxiety or concern." Steigelman , ¶ 23 (quoting *148 State v. Billman , 2008 MT 326, ¶ 43, 346 Mont. 118, 194 P.3d 58 ). Other factors considered include employment loss, financial and economic loss, and whether the accused's associations were curtailed. Steigelman , ¶ 24. Heath expressed concern that the suspension of his license would impact his ability to work, yet he failed to present evidence demonstrating that his employment was impacted. Moreover, Heath testified that he had been steadily employed until October 2016, when he had to leave work due to a non-work-related injury. Heath did not establish that the pretrial delay was detrimental to his employment.
¶27 To some extent, financial hardship is inevitable in every case. Ariegwe , ¶ 96. It's true that Heath incurred significant pretrial release expenses through required participation in the 24/7 Sobriety Program, yet he is unable to establish that the costs amounted to a drain on his financial resources. As part of the program, Heath was required to pay $8 per day to wear a SCRAM bracelet, in addition to the $50 activation fee. Although Heath testified that he was approximately $400 behind on the bracelet payments, he failed to demonstrate that the costs presented a significant economic hardship exceeding that ordinarily experienced by individuals charged with a DUI. Additionally, Heath's participation in and success with the program established his eligibility for the WATCh Program, resulting in a less severe sentence.
¶28 Heath further argues that the delay caused his physical and mental health to deteriorate. Heath links the stress of the delay to weight gain, depression, and high blood pressure. However, the District Court found that the anxiety and depression Heath experienced did not rise above the level normally associated with criminal charges. "A certain amount of anxiety and concern is inherent in being accused of a crime." Ariegwe , ¶ 97.
¶29 Finally, there is no evidence that Heath's defense was impaired by the delay. This factor is characterized as "the most serious" of the interests that the speedy trial right was designed to ***50 protect, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Ariegwe , ¶ 98 (quoting Barker v. Wingo , 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972) ). Heath presented no evidence of lost, destroyed or unavailable evidence due to delay, nor did he point to witness unavailability or other impairments to his defense. This factor weighs in favor of the State.
¶30 The District Court's balancing of the four Ariegwe factors does not amount to error. Although most of the delay, 451 days, is attributed to the State, all of it is institutional in nature. Heath is responsible for the remaining 360 days. Importantly, Heath's response to the delays was not indicative of a sincere desire to hasten trial and he did not suffer prejudice or detriment to his defense.
¶31 The State has met its burden in justifying the length of the delay and has overcome any presumption of prejudice to Heath arising from the delay. We affirm the District Court's conclusion that Heath was not deprived of his right to a speedy trial.
¶32 2. Did the District Court err when it admitted Heath's blood alcohol concentration into evidence?
¶33 Heath argues that the circumstances of his blood draw for the DUI investigation violated Montana law. Section 61-8-405(1), MCA, provides:
Only a physician, registered nurse, or other qualified person acting under the supervision and direction of a physician or registered nurse may, at the request of a peace officer, withdraw blood for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person.
¶34 After Heath was arrested and transported to Jefferson County Jail, a search warrant was issued to draw Heath's blood and test for alcohol. Advanced EMT Margaret Carey drew Heath's blood at the jail and sent it to the crime lab for testing. The test results indicated that Heath's BAC was 0.212. At the time, Carey was under the supervision of Pat Alduenda, a physician assistant at St. Peter's Hospital in Helena, Montana.
¶35 Heath argues that because Carey was only under the supervision of a physician *149 assistant, and not a physician or a registered nurse, the blood draw violated the plain language of § 61-8-405(1), MCA. His argument is not persuasive.
¶36 Section 37-20-403(1), MCA provides: "A health care provider shall consider the instructions of a physician assistant as being the instructions of the supervising physician as long as the instructions concern the duties delegated to the physician assistant."
***51 When §§ 61-8-405(1) and 37-20-403(1), MCA are read together, a physician assistant who is under the supervision of a physician will meet the statutory requirements of § 61-8-405(1), MCA, considering the physician assistant acts as an agent of the supervising physician. Section 1-2-101, MCA ; Spoklie v. Mont. Dep't of Fish, Wildlife & Parks , 2002 MT 228, ¶ 24, 311 Mont. 427, 56 P.3d 349 (citing the maxim that statutes should be read together and, whenever possible, meaning shall be given to all).
¶37 Here, Pat Alduenda was under the supervision of a physician. Therefore, as an agent of that physician, Alduenda met the requirements of § 61-8-405(1), MCA, and the blood draw did not violate Montana law.
¶38 Heath further challenges the fact the blood draw took place in a jail and not in a traditional hospital setting. Our function as an appellate court is to interpret statutes according to the plain meaning of the words used. State v. Madsen , 2013 MT 281, ¶ 8, 372 Mont. 102, 317 P.3d 806. The plain language of § 61-8-405(1), MCA, does not support this contention, considering the statute does not place limitations on where the blood draw may take place. The sample was taken pursuant to a search warrant. Moreover, there is no indication that the sample was somehow contaminated or rendered unreliable by virtue of the location.
CONCLUSION
¶39 The District Court did not commit error when it found that Heath was not deprived of his right to a speedy trial and denied his motion to dismiss.
¶40 When §§ 61-8-405(1) and 37-20-403(1), MCA, are read together, the blood draw comported with Montana law and the District Court properly admitted the results of Heath's blood test into evidence.
¶41 Affirmed.
We Concur:
JIM RICE, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.