FILED

04/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0555

DA 17-0555

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 88N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

SHAYNE BERTELSEN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. DDC 15-582
                    Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
            Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Roy Brown, Assistant
            Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Jennifer Quick, Deputy
            County Attorney, Great Falls, Montana

Submitted on Briefs:  March 25, 2019

Decided:  April 14, 2020

Filed:

                      _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Shayne Donald Bertelsen ("Bertelsen") appeals from an order of the Eighth Judicial District Court, Cascade County, denying his motion to dismiss on lack of speedy trial.  Bertelsen argues his constitutional right to a speedy trial was violated when the State caused 411 days of delay between when the Information was filed prior to his arrest and when his jury trial occurred.  Bertelsen also argues the District Court illegally assessed an information technology fee in its sentence, which the State conceded.  We affirm the District Court's denial of Bertelsen's speedy trial motion and his conviction. We reverse the District Court's decision regarding the technology fee.

¶3      On December 9, 2015, Bertelsen was arrested and charged by Information with incest for having sexual contact with his four-year-old granddaughter.  On the same day, Bertelsen was released on bond.  On December 24, 2015, Bertelsen was arraigned on the Information and his first trial setting was set for April 11, 2016, 124 days after his arrest.

¶4      Bertelsen's trial was continued several times.  The first continuance was a result of the State's April 5, 2016 unopposed motion to continue trial to accommodate the victim's mother's schedule, as they had recently moved to another state.  The matter was reset for

2

July 18, 2016. On July 12, 2016, the District Court granted the State's second motion to continue, resulting in resetting trial to September 12, 2016. The second continuance was a result of the State losing contact with the victim's mother. Bertelsen had contacted the victim's mother, asserting in a Facebook message that the "prosecutor is going to drop [the case]" because there was "no evidence" and "the judge might try to charge you with contempt of court[.]" After Bertelsen's message, the State lost contact with the victim's mother, later learning that she had believed Bertelsen's false assertions. As a result, the District Court granted the State's unopposed motion to continue the trial to allow the State to re-establish contact with its key witnesses. The State also amended its Information to add a new charge of witness tampering. Additionally, the State filed a Verified Application to Revoke Bond, alleging and providing supporting documentation that Bertelsen had contacted the victim's mother, a violation of the conditions of his release. On July 13, 2016, the District Court revoked Bertelsen's bond and issued a warrant for his arrest. On July 21, 2016, 225 days after his initial arrest and release on bond, Bertelsen was arrested on the warrant. Due to Bertelsen's witness tampering charge, his current counsel was conflicted out of the case since he was a witness to the charge. As a result, Bertelsen requested a continuance, resetting the September 12, 2016 trial date to January 23, 2017, the final trial date, 411 days after his first arrest and 186 days after his second arrest.

¶5     On January 17, 2017, a week before trial, Bertelsen filed a motion to dismiss, alleging a speedy trial violation and arguing that most of the delay was due to the State's lack of diligence and bad faith. On January 20, 2017, the District Court held a hearing on

3

Bertelsen's motion, where Bertelsen's counsel appeared to request "another three months" to "get prepared or get more time" since they were "pressed up against the trial again." However, when the District Court stated it was confused and asked whether Bertelsen was requesting another continuance, Bertelsen's counsel replied that she was "not asking for a continuance." The District Court then issued an order denying Bertelsen's speedy trial motion. Bertelsen was found guilty by a jury of Incest and Tampering with a Witness on January 25, 2017. Bertelsen appeals.

¶6 On April 16, 2019, this Court remanded the issue to the District Court for entry of findings of fact, conclusions of law, and a balancing analysis of the speedy trial factors set forth in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. On May 22, 2019, upon remand, the District Court issued an order concluding that in balancing the *Ariegwe* factors, "the delay of trial for 411 days, while unfortunate, did not violate the Defendant's constitutional right to a speedy trial" and reaffirmed the convictions of Incest and Tampering with Witnesses.

¶7 We review a district court's denial of a motion to dismiss for lack of a speedy trial to determine whether the district court's findings of fact are clearly erroneous. *Ariegwe*, ¶ 119. A district court's determination that the factual circumstances do not establish a speedy trial violation is a question of law that we review de novo. *Ariegwe*, ¶ 119.

¶8 The Sixth Amendment and the Fourteenth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution, guarantee a criminal defendant the right to a speedy trial. *State v. Steigelman*, 2013 MT 153, ¶ 12, 370 Mont. 352, 302 P.3d 396. In evaluating a speedy trial claim, which becomes

4

colorable after at least a 200-day delay, a court balances the following *Ariegwe* factors: (1) length of delay; (2) reasons for delay; (3) the accused's response to the delay; and (4) prejudice to the accused. *Ariegwe*, ¶¶ 107-113. None of the factors are dispositive and the court must engage in a "sensitive balancing process." *Ariegwe*, ¶ 102.

¶9 After balancing the *Ariegwe* factors, the District Court adopted findings of fact and conclusions of law. While the length of the delay of 411 days weighs in favor of Bertelsen, the reasons for the delay weigh in favor of the State. Most of the delay was institutional. Those delays are inherent in the criminal justice system and are caused by circumstances largely beyond the control of the prosecutor and the accused, such as overcrowded dockets. *State v. Couture*, 2010 MT 201, ¶ 72, 357 Mont. 398, 240 P.3d 987. Such delays "weigh less heavily against [the State] than delay caused by bad faith, negligence, or lack of diligence." *Couture*, ¶ 72. Delays are justified for valid reasons such as a missing witness. *Ariegwe*, ¶ 67.

¶10 The first delay of 124 days, the time period between Bertelsen's first arrest and the first trial setting, was conceded by Bertelsen as an institutional delay. The second delay of 98 days was also an institutional delay. That delay was a result of the victim's mother and the victim relocating out of Montana and their unavailability for the first trial setting on April 11, 2016.

¶11 When the accused causes a particular delay, it will be attributed to him. *State v. Heath*, 2018 MT 318, ¶ 18, 394 Mont. 41, 432 P.3d 141. The third delay, 56 days, was directly attributable to Bertelsen. He tampered with the witnesses by falsely telling the victim's mother, in a Facebook message, that the prosecution dropped the case and that

she would be charged with perjury and held in contempt if she showed up for trial. The fourth delay, 133 days, was also correctly attributed to Bertelsen by the District Court. After the State added the tampering charge, Bertelsen moved to continue the trial because he now had a legal conflict with his attorney, in that his attorney was a known witness to the tampering charge. Bertelsen argues that the fourth delay was a direct result of the State's decision to add the tampering charge and that the State thereby created the delay. However, it was Bertelsen's tampering with the witnesses that caused the State to add the tampering charge.

¶12 Accordingly, 189 days of the 411-day delay were attributable to Bertelsen and 222 days of the delay were attributable to the State as an institutional delay. Nothing in the record suggests that the State negligently or intentionally caused the delay. The District Court correctly concluded that the "State has made a strong showing that the delay of 411 days . . . is out-weighed by the reason for the delay."

¶13 Regarding the third factor, Bertelsen's response to the delay, the District Court correctly concluded that the "record, as a whole, indicates that the Defendant did not want a speedy trial; rather, he wanted the case dismissed because the State could not locate the victim to have her testify against him." Under the test set forth in *Ariegwe*, whether the accused actually wanted to be brought to trial promptly is an important consideration in ascertaining whether his or her right to a speedy trial has been violated. *Ariegwe*, ¶¶ 76, 136-42. In making this determination, a court must consider the totality of the circumstances, including: (1) whether and how the accused asserted the speedy trial right; (2) the frequency and force of the accused's objections to pretrial delays; and

6

(3) the reasons for any acquiescence by the accused in pretrial delays. *Ariegwe*, ¶ 76 (citing *Barker v. Wingo*, 407 U.S. 514, 529-36, 92 S. Ct. 2182, 2191-95 (1972)). Conduct by an accused that demonstrates a "desire to avoid trial" weighs heavily against him. *State v. Brekke*, 2017 MT 81, ¶ 18, 387 Mont. 218, 392 P.3d 570.

¶14 It is clear that Bertelsen was not interested in a speedy trial. Bertelsen failed to object to the State's first and second continuances and requested a continuance himself prior to the third trial setting that resulted in resetting the eventual trial date to January 23, 2017. While failure to object to continuances "does not, by itself, establish that the accused did not want a speedy trial," *State v. Zimmerman*, 2014 MT 173, ¶ 24, 375 Mont. 374, 328 P.3d 1132, the record as a whole indicates Bertelsen did not desire a speedy trial. Bertelsen waited until the 405th day, six days before trial, to assert his right. We held in *Ariegwe*, which concerned a 373-day delay, "waiting this long past the 200-day trigger date to assert the right would suggest he was not particularly interested in being brought to trial sooner." *Ariegwe*, ¶ 140.

¶15 Finally, Bertelsen was not prejudiced by the trial delay. Under this fourth factor, there are three sub-factors that must be considered in our analysis, which include the desire to: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the dimming memories and the loss of exculpatory evidence will impair the defense. *Ariegwe*, ¶¶ 88, 113. Bertelsen does not challenge the District Court's findings on subfactors two and three. Accordingly, our analysis will focus on oppressive pretrial incarceration.

¶16    Whether an accused's pretrial incarceration was oppressive depends on the particular circumstances of that incarceration. *Couture*, ¶ 56. We consider "the duration of the incarceration, the complexity of the charged offense, any misconduct by the accused directly related to his incarceration, and the conditions of the incarceration . . . ." *Couture*, ¶ 56.

¶17    Bertelsen was arrested on December 9, 2015, and released the same day. After violating the conditions of his release by contacting the victim's mother, his bond was revoked. Bertelsen was then arrested on July 21, 2016, and his trial occurred January 23, 2017, 186 days after his second arrest.[1] The pretrial incarceration was not oppressive.

¶18    Regarding the assessment of the technology user fee, both parties agree the fee was incorrectly applied. Accordingly, we instruct the District Court to amend condition 45(d) of the sentence to reflect the technology fee change and to correct the mistaken charge to condition 45(b). The technology fee under condition 45(d) should be assessed at $10 per user, not per count. *See* § 3-1-317(1)(a), MCA; *State v. Pope*, 2017 MT 12, ¶ 32, 386 Mont. 194, 387 P.3d 870.

¶19    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

---

[1] The delay following the tampering charge and trial was less than 200 days. Therefore, a speedy trial analysis on the tampering charge is not implicated.

¶20    Affirmed in part, reversed in part, and remanded to the District Court to revise the written terms of the sentence consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA