FILED

05/30/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0381

DA 21-0381

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 98

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

CLAYTON DOUGLAS KIRN,

  Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
      In and For the County of Butte Silver Bow, Cause No. DC 19-259
      Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Chad Wright, Appellate Defender, Helena, Montana

   For Appellee:

     Austin Knudsen, Montana Attorney General, Bjorn Boyer, Assistant
     Attorney General, Helena, Montana

     Eileen Joyce, Silver Bow County Attorney, Ann M. Shea, Deputy County
     Attorney, Butte, Montana

       Submitted on Briefs: April 12, 2023

          Decided: May 30, 2023

Filed:

         _____
               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Clayton Douglas Kirn (Kirn) was convicted by a jury in the First Judicial District Court, Butte-Silver Bow County, of aggravated burglary, § 45-6-204(2), MCA, and obstructing a police officer, § 45-7-302, MCA.  Kirn appeals, arguing his Motion to Dismiss should have been granted because he was denied a speedy trial and the jury was not properly instructed.  Kirn also argues the sentencing court incorrectly referred to him as a registered violent offender and that Kirn had ten felonies, rather than the nine he had. We affirm and remand for resentencing.

¶2     We restate the issues on appeal:

1.  *Was Kirn's constitutional right to a speedy trial violated?*

2.  *Should this Court exercise plain error review to consider alleged errors in instructing the jury?*

3.  *Is Kirn entitled to resentencing because the District Court relied on incorrect information when it imposed his sentence?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     On September 17, 2019, around 2:25 a.m., a male opened Melissa Laird's (Laird) back door and entered her house.  Laird was in her bed when she felt someone climb on top of her.  The male told her he loved her and threatened Laird that if she said anything he would kill her.  Laird, while barely moving her head, woke up her husband, James Spencer (Spencer), who was sleeping next to her.  Spencer demanded the male identify himself.  The male responded his name was "Clayton."  The male got off Laird, left the bedroom, went through the kitchen, and into the living room.  Laird and Spencer followed,

yelling at the male to get out of their house. The male left through the back door. Although Laird did not see the male with a weapon, she testified she was afraid of being injured during the incident.

¶4     Officers Brian Ellingson and Chris Tierney responded to the scene. Laird described the male as Caucasian, with a buzz cut, wearing a dark-colored T-shirt, and carrying a backpack. Kirn, who fit the description provided by Laird, was located by Officer Ellingson two blocks from Laird's home. When officers began questioning Kirn, he took off running and was apprehended a short distance away. Officer Tierney found Kirn's discarded backpack around the corner from where Kirn was apprehended.

¶5     The State filed a complaint in justice court on September 17, 2019, charging Kirn with aggravated burglary and obstructing a police officer. Kirn was advised of his rights and the charges, bond was set, and he was appointed counsel. On October 30, 2019, the State filed an Information in District Court, and Kirn subsequently entered not guilty pleas at his arraignment on November 6, 2019. At an omnibus hearing held December 4, 2019, the court scheduled the final pretrial conference for March 18, 2020, and the trial for April 20, 2020. Kirn requested until February 5, 2020, to file motions. The parties indicated this pre-trial schedule was reasonable given the nature and circumstances of the case.

¶6     On February 3, 2020, Kirn requested an extension of the motions deadline from February 5, 2020, to February 19, 2020, which was granted by the District Court. Also, a

notice of substitution of defense counsel was filed on February 13, 2020, because of a conflict. There were no changes made to the scheduling order.

¶7 The Butte-Silver Bow Courthouse was closed due to the pandemic on March 23, 2020. Consequently, the District Court vacated the current scheduling order and set the final pre-trial conference for July 29, 2020, and a jury trial for August 17, 2020. The court further advised that if then-Governor Steve Bullock's shelter in place order was lifted prior to the scheduled times, Kirn could move the court for earlier case settings. The shelter in place order remained in effect until May 4, 2020. Kirn did not object to the continuance, nor did he request an earlier trial setting than August 17, 2020.

¶8 At the final pretrial conference on July 29, 2020, the parties appeared and Kirn's counsel indicated he was ready to proceed to trial. However, Kirn indicated that his counsel had not filed any pretrial motions or discussed trial strategy with him. The court excused the prosecutor so that Kirn's complaint could be addressed without violating any confidentialities. Thereafter, defense counsel agreed there was a complete breakdown in communication and new counsel should be appointed. Kirn also told the court that he wanted new counsel appointed. Kirn then stated his speedy trial rights had been violated and complained about the length of time it took his first counsel to discover there was a conflict. The Court explained:

> [Court]: Sir, I'm ready to go to trial on August 17, but I'm getting you new counsel and they're not going to be ready to go. So we'll get you in as quickly as we can.
> [Kirn]: I'm ready to go.
> [Court]: Okay. Well, you're going to need counsel to go.
> [Kirn]: Obviously.

4

| [Court]: | So I'll get you—I'll have OPD assign new counsel to you, and the minute your new counsel is ready we'll get you tried. |
|---|---|
| [Kirn]: | Thank you. |

¶9 On August 14, 2020, the court filed its written order granting Kirn new counsel. In that order the court mistakenly stated the trial was set for September 21, 2020, when the August 17, 2020 trial had never been vacated. New counsel entered their appearance on August 19, 2020, and filed a motion to have bail reduced on October 28, 2020. Following a hearing on November 10, 2020, the court declined to reduce bail. The court asked counsel when they would be ready for trial and defense counsel indicated that mid to late January 2021 would be acceptable. The court set trial for January 25, 2021.

¶10 On January 4, 2021, Kirn filed a Motion to Dismiss for Speedy Trial Violation. On January 14, 2021, the court issued an order vacating the January 25 trial date so the parties could brief the motion and the court could hold a hearing. The court reset the trial for April 12, 2021, and denied Kirn's Motion to Dismiss on February 16, 2021.

¶11 The case was tried on April 12-13, 2021. At trial, Laird testified she suffered emotionally and had a lot of anxiety because of Kirn's invasion of her home and his attack. Laird began taking sleep-aid medications, started locking her doors, and purchased a firearm and protection dog. Spencer corroborated Laird's narrative, testifying Laird's anxiety was "worse than ever" after the burglary. Spencer believed the home invasion "changed everything."

¶12 Kirn defended his case on a mistaken identity theory. Kirn alleged he traveled the day of the incident with a friend from Billings to Butte because he "didn't have anything

5

else to do." He claimed that upon arriving in Butte, his friend deserted him. Kirn testified he walked "around aimlessly" until the officers found him near Laird's residence. He explained he dropped his backpack a short distance away because he had "blisters" on his feet and could no longer carry his backpack. Kirn admitted he had a pocketknife on his person the night of the attack.

¶13 The court instructed the jury, without any objection from Kirn, on the individual elements of aggravated burglary (Instruction 19); the crime of assault (Instruction 23); the definition of "attempt" (Instruction 24); a conduct-based definition of "purposefully" (Instruction 15); and the definition of aggravated burglary (Instruction 18). The jury found Kirn guilty of aggravated burglary and obstructing a peace officer.

¶14 The District Court held Kirn's sentencing on June 2, 2021. Kirn's presentence investigation report (PSI) listed his lengthy criminal history and prior failures on probation. The PSI indicated Kirn had convictions for five adult felonies and four juvenile felonies. During sentencing, the District Court noted Kirn had ten felonies and that Kirn was a "registered violent offender." The District Court sentenced Kirn to 40 years for aggravated burglary and 6 months for obstructing a peace officer. The sentences were run concurrently.

## STANDARD OF REVIEW

¶15 We review speedy trial violations de novo and the court's factual findings based on clear error. *State v. Velasquez*, 2016 MT 216, ¶ 6, 384 Mont. 447, 377 P.3d 1235. To address a speedy trial claim, a trial court must first make findings of fact. *State v.*

6

*Houghton*, 2010 MT 145, ¶ 13, 357 Mont. 9, 234 P.3d 904. We review those factual findings to determine whether they are clearly erroneous. *Houghton*, ¶ 13. A trial court's factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves the appellate court with the definite and firm conviction that a mistake has been made. *State v. Martinez*, 2003 MT 65, ¶ 19, 314 Mont. 434, 67 P.3d 207. While factual findings are reviewed under the clearly erroneous standard, whether those facts amount to a violation of the defendant's right to a speedy trial is a question of constitutional law. *Houghton*, ¶ 13.

¶16 The standard of review for jury instructions is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Dunfee*, 2005 MT 147, ¶ 20, 327 Mont. 335, 114 P.3d 217. The district court has broad discretion in formulating jury instructions. *State v. Spotted Eagle*, 2010 MT 222, ¶ 6, 358 Mont. 22, 243 P.3d 402. To constitute reversible error, any mistake in instructing the jury must prejudicially affect the defendant's substantial rights. *Spotted Eagle*, ¶ 6.

¶17 Record-based ineffective assistance of counsel claims present mixed questions of law and fact that this Court reviews de novo. *State v. Chafee*, 2014 MT 226, ¶ 11, 376 Mont. 267, 332 P.3d 240. We may exercise plain error review when failure to do so would result in a manifest miscarriage of justice, leave unsettled the fundamental fairness of the proceeding, or compromise the integrity of the judiciary. *State v. Akers*, 2017 MT 311, ¶¶ 13-17, 389 Mont. 531, 408 P.3d 142.

¶18 Whether a district court violated the defendant's constitutional rights at sentencing is reviewed de novo. *State v. Keefe*, 2021 MT 8, ¶ 11, 403 Mont. 1, 478 P.3d 830.

## DISCUSSION

¶19 *Was Kirn's constitutional right to a speedy trial violated?*

¶20 The Sixth and Fourteenth Amendments of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant's right to a speedy trial. This Court has a revised speedy trial test set forth in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815, based on *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972). The four *Ariegwe* factors include: (1) the length of the delay, (2) the reason for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused from the delay. *Ariegwe*, ¶¶ 34-35. "No one factor is dispositive; the factors are related and must be assessed together with other relevant circumstances." *State v. Burnett*, 2022 MT 10, ¶ 17, 407 Mont. 189, 502 P.3d 703 (citing *Ariegwe*, ¶ 112). The above factors "must be considered together with such other circumstances as may be relevant." *Ariegwe*, ¶ 102. "[E]ach factor's significance will vary from case to case, and a court assessing a speedy trial claim must weigh the four factors accordingly—i.e., based on the facts and circumstances of the particular case." *Ariegwe*, ¶ 105.

**Length of Delay**

¶21 There is no need to engage in a speedy trial analysis until the delay is presumptively prejudicial. *Ariegwe*, ¶ 37 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). The necessary length of time to trigger further speedy trial analysis is 200 days. *City of Billings*

8

*v. Bruce*, 1998 MT 186, ¶ 5, 290 Mont. 148, 965 P.2d 866.  Here, the threshold requirement that the delay was presumptively prejudicial has been satisfied.  Kirn was arrested on September 17, 2019, and remained incarcerated pending his trial on April 12, 2021.  The interval between Kirn's formal arrest and his trial date was 573 days.  The delay extended 373 days past the trigger date.  Hence, the delay is presumptively prejudicial and a speedy trial analysis under the remaining factors is required.  We note that, as the delay extends past the trigger date "the presumption that pretrial delay has prejudiced the accused intensifies over time, and . . . the State's burden under Factor Two to justify the delay likewise increases with the length of the delay." *Ariegwe*, ¶ 62.

**Reasons for the Delay**

¶22    The second factor requires courts to "identify each period of delay in bringing the accused to trial." *Burnett*, ¶ 21.  First, "actions or events that did not result in a delay" will not be considered. *Burnett*, ¶ 21.  Because the issue under this factor is one of "delay," courts must not consider actions taken by the State or the accused which do not result in the postponement of the trial date. *Ariegwe*, ¶ 63.  Second, each period of delay must be attributed to the defense or the State. *Burnett*, ¶ 21.  Lastly, courts must assign weight to each delay based on the specific cause and motive for the delay after identifying and assigning each period of delay. *Burnett*, ¶ 21.

¶23    The analysis also requires the assignment of a level of culpability. *Burnett*, ¶ 22.  Bad-faith delay, which represents a deliberate attempt to hamper the defense, is weighed most heavily against the State. *Burnett*, ¶ 22.  Institutional delay—*i.e.*, crowded court

dockets, necessary time for pre-trial discovery and preparation—is attributable to the State and weighs less heavily. *Burnett*, ¶ 22. Lack of diligent or negligent prosecution occupies a middle ground on the culpability scale, although still an "unacceptable" reason for delay. *Burnett*, ¶ 22. To be attributed to the State as negligence or lack of diligence, the delay must cause the trial to be set later than what would have occurred without the claimed negligence. *Burnett*, ¶ 21. "Valid" reasons for delay, such as missing witnesses, weigh least heavily against the State. *Burnett*, ¶ 22.

¶24 Delays caused by the defendant are analyzed similarly to delays caused by the State. *Burnett*, ¶ 22. If a defendant causes a delay, it will be attributable to him. *State v. Heath*, 2018 MT 318, ¶ 18, 394 Mont. 41, 432 P.3d 141. Where a defendant requests and acquiesces in a continuance, the delay caused by the continuance will likewise be attributed to the defendant. *Heath*, ¶ 18.

¶25 Here, the first period of delay occurred between September 17, 2019, and April 20, 2020, for a total of 217 days. The District Court attributed the 217 days to the State as institutional delay "reasonably required for pre-trial preparation." Kirn argues on appeal the State was negligent for waiting 44 days after his formal arrest to file the Information and the alleged 44-day delay must be attributed to the State. While this delay is attributed to the State, nothing in the record suggests that the trial would have occurred sooner had the State filed the Information earlier. Moreover, at the time of the omnibus hearing on December 4, 2019, Kirn was not prepared to file pretrial motions and requested that he have until February 5, 2020, to file motions. Taking into consideration the February 5 date

10

and recognizing the parties' need to complete discovery and adequately prepare their cases, the District Court reasonably scheduled the final pretrial conference for March 18, 2020, and trial for April 20, 2020. Further, Kirn requested a two-week extension of the motions deadline, which must be attributed to Kirn. The District Court did not commit clear error when it attributed the first 217-day period to the State as institutional delay, weighing minimally against the State.

¶26 The second period of delay was the 100 days between the original April 20, 2020, trial date and the July 29, 2020, final pretrial conference. The District Court found, "[w]hile this is institutional delay, the Covid-19 pandemic and mandatory closures that resulted were not something the State could control." The District Court, therefore, gave it little weight.

¶27 In *State v. Hesse*, 2022 MT 212, 410 Mont. 373, 519 P.3d 462, we affirmed a district court's finding that "delays related to Covid-19 . . . were institutional delays and thus weighed only minimally against the State." *Hesse*, ¶ 13. In a March 27, 2020, memorandum issued by this Court, we suspended criminal jury trials through May 4, 2020. We advised the district courts that any delay was to be considered institutional delay. Butte-Silver Bow County took additional precautions that effectively closed the courthouse until June 1, 2020. When the District Court vacated the April 12, 2020, trial, it explained to Kirn he could "move the court for earlier case settings" if the Covid-19 restrictions were lifted prior to the August 17, 2020, trial date. Kirn never requested an expedited trial date after June 1, 2020, when the courthouse reopened. Therefore, we conclude the District

11

Court's finding that the 100-day delay period was institutional and should weigh minimally against the State was not clearly erroneous.

¶28 Kirn also asserts that the period between June 1, 2020, and July 29, 2020—the date set for the pretrial conference—should be attributed to the State as negligent delay. We disagree. Kirn's argument unrealistically assumes that the District Court could have heard the backlog of cases created by the pandemic on the reopening date of June 1, 2020. This time was minor institutional delay weighing less heavily against the State because "overcrowded court dockets" constitute institutional delay. *See Hesse*, ¶ 12.

¶29 The third period of delay—180 days—occurred between the pretrial conference on July 29, 2020, and the new trial date of January 25, 2021. The District Court attributed this delay to Kirn due to his request for new counsel. When the parties appeared for the final pretrial conference, Kirn's counsel informed the District Court that he was ready to proceed with trial. However, Kirn demanded appointment of new counsel. Kirn's counsel agreed there had been a complete breakdown in communication and new counsel should be appointed. The District Court advised Kirn that appointing new counsel would result in a delay of the trial date. Kirn accepted this reality during the colloquy with the trial judge and stated his "speedy trial rights" were "past the trigger point."

¶30 When the Office of the Public Defender provided notice of Kirn's substitute counsel, counsel did not file any motions until he renewed Kirn's bail modification request on October 24, 2020. At the November bail hearing, counsel requested the trial be delayed to January 2021 to accommodate a surgery he was scheduled to have in December.

Accordingly, the District Court's finding that the 180-day delay was attributable to Kirn was not clearly erroneous because Kirn's request for new counsel and counsel's request that the trial take place in January 2021 were the cause for the delay.

¶31 The fourth period of delay occurred between January 26, 2021, and April 12, 2021, for a total of 76 days. Kirn concedes this delay should be attributed to him because he filed his Motion to Dismiss on January 4, 2021, which was less than 30 days prior to trial. *See Heath*, ¶ 20 (explaining delay caused by filing a speedy trial motion less than 30 days before trial is attributed to the defendant).

**Response to the Delay**

¶32 While an assertion of the right to a speedy trial at any time prior to commencement of trial is sufficient to satisfy the third prong of the *Barker* test, the reviewing court also must consider whether the accused actually wanted a speedy trial under the circumstances. *Ariegwe*, ¶ 79. Courts must analyze a defendant's response to delay "based on the surrounding circumstances—such as the timeliness, persistence, and sincerity of the objections, [and] the reasons for [any] acquiescence." *Ariegwe*, ¶110.

¶33 Kirn asserted his right to a speedy trial by motion filed on January 4, 2021, 473 days after his arrest. Kirn claimed his speedy trial rights were violated prior to the Covid-19 delay. At the final pretrial conference, he stated he had been incarcerated for 192 days and said, "you guys could have took me to trial a long time ago." Despite his belief that his speedy trial rights were violated, he nonetheless delayed the trial when he "fired" his counsel, after being advised by the court that it would delay his trial. In addition, Kirn

13

could have moved the court, under its own advisement, to expedite his trial date when the courthouse reopened on June 1, 2020. Further, Kirn's argument that he asserted his speedy trial rights by requesting bail hearings and habeas forms from the Clerk of Court has no merit because the evidence does not show he indicated he wanted to go to trial when he made these requests. Accordingly, Kirn's response to the delay weighs against him.

**Prejudice Resulting from Delay**

¶34    Under the fourth and final factor, courts must consider whether the defendant has been unduly prejudiced by the delay. Courts must examine: (1) whether the accused was subject to oppressive pretrial incarceration; (2) whether the accused suffered excessive anxiety or concern; and (3) whether the defense was impaired by dimming memories or loss of potential exculpatory evidence. *Ariegwe*, ¶ 88 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. 2193). Where the delay attributed to the State exceeds 200 days, courts will require "less proof of prejudice from the defendant and a greater showing of lack of prejudice from the State." *Heath*, ¶ 24. "Courts consider whether pretrial incarceration was oppressive in light of all of the circumstances of the incarceration." *Hesse*, ¶ 16. If the charges are complex, a lengthier period of pretrial incarceration is considered "less oppressive" than when the charges are "simple ones." *Hesse*, ¶ 16. The Court should consider the conditions of incarceration, such as "overcrowding, lack of health care, or limited legal research capabilities" that might make the incarceration more oppressive. *Hesse*, ¶ 16.

¶35    On appeal, Kirn argues his incarceration was oppressive because he made numerous attempts to get out of jail by requesting habeas forms and filing a bail motion. Not all

pretrial incarceration is oppressive and being held on appropriate bond militates against oppressiveness. *State v. Spang*, 2007 MT 54, ¶ 14, 336 Mont. 184, 153 P.3d 646; *Ariegwe*, ¶ 92. Any delay committed by the District Court in addressing Kirn's bail motion did not change the outcome because Kirn's bond remained the same and was appropriate for the seriousness of the offense. Kirn also criticizes the District Court for failing to consider his financial ability to post bail. However, the District Court did consider the serious nature of Kirn's charges, that Kirn had a history of failing to appear, that Kirn also had a history of violating probation, and there were concerns for public safety. Kirn does not allege he has been deprived of adequate food, clothing, or medical care. Nothing in the record shows he experienced overcrowding or inadequate conditions at the county jail.

¶36 When considering whether the accused suffered excessive anxiety or concern, the central inquiry is "whether the delay in bringing the accused to trial has unduly prolonged the disruption of his or her life or aggravated the anxiety and concern that are inherent in being accused of a crime." *Ariegwe*, ¶ 97. Loss of employment or income, public scorn, damage to reputation, curtailment of associations, and anxiety and stress are possible ways unresolved criminal charges may disrupt an accused's life. *Ariegwe*, ¶¶ 96, 113.

¶37 Here, the District Court found Kirn experienced "a significant disruption in his freedom of movement and association while awaiting trial." Notwithstanding, Kirn made no allegations concerning any lost employment opportunities or other economic hardship resulting from his incarceration. The record does not support that Kirn suffered unreasonable anxiety or concern due to pretrial delay. Kirn did not testify that his pretrial

15

incarceration caused him anxiety or concern. As the District Court held, "[t]he bail set in this case . . . was consistent with the nature of the alleged offenses and the potential threat to the community posed by Defendant." The District Court's findings that Kirn did not suffer from excessive anxiety or concern were not clearly erroneous.

¶38 Under the impairment of defense analysis, courts consider "whether the delay has weakened the accused's ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Ariegwe*, ¶ 111. "Impairment of defense is arguably the most important of the three [prejudice] factors to consider because a defendant's inability to adequately prepare his case undermines the fairness of the entire trial system." *Ariegwe*, ¶ 98; *Heath*, ¶ 29.

¶39 Kirn claims on appeal that he was prejudiced by fading memories, which he argues led Laird to make an unreliable, on-the-stand identification of him as her attacker. We observe initially that Kirn did not argue at his speedy trial hearing that Laird's memory was impacted by the passage of time. More importantly, however, Kirn has not demonstrated that Laird's in-court identification was the result of her fading memory. The District Court did not err in finding that Kirn "did not allege that his ability to prepare and present a defense has been diminished in any way as a result of his incarceration pending trial."

**Balancing the Four Factors**

¶40 Considering all factors together, we conclude the District Court correctly determined that Kirn's constitutional right to a speedy trial was not violated. Of the 573 days of delay, 256 days were attributed to Kirn's late request for new counsel and his late

16

filing of his Motion to Dismiss. Of the 317 days remaining, 100 days were institutional delay attributable to the Covid-19 pandemic. The initial 217-day delay was necessary for the parties to prepare their case, conduct discovery, and file motions. The charges were serious and were more complex than simple routine offenses. Kirn's responses to the delay have been inconsistent with his claim of a speedy trial violation because he never requested the District Court to expedite his trial; he "fired" his counsel two weeks before trial; and he filed his Motion to Dismiss on the eve of trial. Kirn has failed to show he was prejudiced by the delay, especially given that the delay was institutional and never intentionally caused by the State. His argument that he is prejudiced by fading memories has no merit. He presented no evidence that the delay caused him anxiety or concern. Accordingly, the District Court's findings are not clearly erroneous, and we affirm the court's denial of Kirn's Motion to Dismiss.

¶41    *Should this Court exercise plain error review to consider alleged errors in instructing the jury?*

¶42    Trial courts have "broad discretion when instructing a jury, [and] an error in instructing will be reversible only if the jury instructions prejudicially affect the defendant's substantial rights." *State v. Dasen*, 2007 MT 87, ¶ 63, 337 Mont. 74, 155 P.3d 1282. This Court "will not consider issues raised for the first time on appeal when the appellant had the opportunity to make an objection at trial." *State v. Daniels*, 2019 MT 214, ¶ 24, 397 Mont. 204, 448 P.3d 511. "A party may not assign as error any portion of the [jury] instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the

17

settlement of instructions." *State v. Mathis*, 2022 MT 156, ¶ 42, 409 Mont. 348, 515 P.3d 758 (quoting § 46-16-410(3), MCA).

¶43 Under the plain error doctrine, reversal without a contemporaneous objection is proper only when the defendant can show the claimed error violated a fundamental right, and that failing to remedy the wrong will result in a miscarriage of justice, put in question the fundamental fairness of the trial, or compromise the integrity of the judicial process. *Akers*, ¶¶13-17. The party requesting plain error review bears the burden of convincing the Court that the "claimed error implicates a fundamental right." *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854. Plain error review is discretionary, and we apply it on a case-by-case basis. *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126.

¶44 Kirn first challenges Instruction 19, which defined the elements of aggravated burglary. The jury was instructed, pursuant to § 46-6-204, MCA, that to convict the State must prove: (1) Kirn entered or remained unlawfully in Laird's residence; (2) he did so with the purpose of committing the offense of assault; and (3) he was armed with a weapon during the offense, or he purposely or knowingly inflicted or attempted to inflict bodily injury on Laird. Kirn argues Instruction 19, because it alternatively provided for "armed with a weapon" or "inflict bodily injury," effectively amended the Information which alleged that he attempted to inflict bodily injury on Laird. Kirn asserts that because the State did not show he had an intention to use his pocketknife, he was not "armed" within

18

the meaning of the statute. He also contends that Instruction 19 violated his right to a unanimous verdict.

¶45 We decline to exercise plain error review because Kirn has not met his heavy burden of demonstrating Instruction 19 caused a manifest miscarriage of justice, affected the fundamental fairness of the proceeding, or compromised the integrity of the judicial process. *See Akers*, ¶¶ 13-17. The State provided evidence in support of both enhancement alternatives in Instruction 19. First, the State produced evidence that Kirn was "armed with a weapon" based on undisputed testimony he had a pocketknife at the time police apprehended him. *See State v. Ray*, 2003 MT 171, ¶ 49, 316 Mont. 354, 71 P.3d 124 (holding a burglar need not "intend to use" a weapon to be "armed" and "armed" means the weapon is "readily accessible and available for use"). Second, Laird testified she suffered from lasting anxiety due to Kirn's actions. Kirn did not contest Laird had suffered from anxiety or that someone had entered her residence in the middle of the night and threatened to kill her. Kirn's defense was that Laird mistakenly identified him at trial. The evidence supported either of the alternatives for the aggravating circumstance. We therefore decline to exercise plain error review of Kirn's unpreserved claim of instructional error for Instruction 19.

¶46 Second, Kirn challenges Instructions 23-24. Instruction 23 defined assault as "mak[ing] physical contact of an insulting nature" or "caus[ing] reasonable apprehension." Instruction 24 defined "attempt": "A person commits the offense of attempt when, with the purpose to commit the offense of assault, the person commits any act toward the

commission of the offense of assault." Kirn argues Instruction 24 was improper because it conflates the offense of "attempt" with "attempt[] to inflict bodily injury" found in the aggravated burglary statute. Kirn expands this argument by claiming the definition of assault given in Instruction 23 includes theories not related to the infliction of bodily injury.

¶47 Kirn has not satisfied his burden to show plain error review is warranted because the jury was properly instructed, in Instruction 19, that to convict Kirn of aggravated burglary under one alternative, the jury had to find Kirn "purposely or knowingly inflicted or attempted to inflict bodily injury on Laird." The disputed instructions mirrored the law provided in the relevant statutes. Taken as a whole, the jury was properly instructed on the elements of aggravated burglary. *See Dasen*, ¶ 63 (explaining jury instructions must be read "as a whole"). We decline to exercise plain error review to consider Instructions 23 and 24.

¶48 Lastly, Kirn challenges Instructions 15 and 18. Instruction 15 incorrectly provided the conduct-based definition of "purposely." Instruction 18 cites verbatim the aggravated burglary statute by providing for the aggravating circumstance that a defendant "purposely, knowingly or negligently inflicts or attempts to inflict bodily injury upon anyone . . . ." Section 45-6-204(2)(b)(ii), MCA.

¶49 While Kirn is correct that the definition of "purposely" should not have been conduct-based, he has not demonstrated that exercising plain error review is warranted. A failure to correctly instruct the jury on the appropriate mental state does not, by itself, warrant plain error review. *State v. Dethman*, 2010 MT 268, ¶¶ 30-33, 358 Mont. 384, 245

20

P.3d 30. Kirn argues that he was prejudiced when the jury was given the wrong "purposely" definition because it allowed the jury to convict him of assault for merely getting on Laird's bed. Yet this ignores the bulk of the evidence—Kirn entered Laird's home while she was asleep in bed, climbed on top of her, and threatened to kill her if she said anything. He then fled from the police. Kirn has not demonstrated how he was prejudiced by the jury being provided the wrong mental state instruction and, thus, we decline to exercise plain error review.

¶50 Kirn argues Instruction 18 was incorrect because the definition of "attempt" in § 45-5-103, MCA, requires the person to act "purposely" and an individual cannot act purposely and "negligently," as provided in § 45-6-204(2)(b)(ii), MCA, simultaneously. Instruction 18 did not prejudice Kirn because Instruction 19, which set forth the elements of aggravated burglary in the factual context of Kirn's case, properly instructed the jury it could find Kirn guilty only if he "purposely or knowingly inflicted or attempted to inflict bodily injury" on Laird–thus, omitting any reference to negligence. The jury instructions must be read as a whole. *Dunfee*, ¶ 20. Since Instruction 19 properly instructed the jury, Instruction 18's incorrect definition of mental state—particularly in light of the evidence— did not result in a manifest miscarriage of justice, affect the fundamental fairness of the proceeding, or compromise the integrity of the judicial process.

¶51 Alternatively, Kirn argues this Court should apply the cumulative error doctrine. The cumulative error doctrine only allows for reversal when multiple errors, taken together, prejudice a defendant's right to a fair trial. *State v. Smith*, 2020 MT 304, ¶ 16, 402 Mont.

21

206, 476 P.3d 1178. The defendant retains the burden to establish prejudice and the "cumulative effect of errors will rarely merit reversal." *Smith*, ¶ 16; *George*, ¶¶ 16-17.

¶52 While there may have been some instructional error, the record does not support, for the reasons already stated, that Kirn was prejudiced. The evidence of Kirn's offensive conduct towards Laird and the effect of his conduct on Laird was undisputed. Kirn's mistaken identity defense, which the jury rejected, did not rebut the overwhelming evidence that the offense occurred. The instructions—taken as a whole—did not prejudice or substantially affect Kirn's fundamental rights. The State satisfied its burden of proving beyond a reasonable doubt that Kirn committed aggravated burglary. Therefore, this case does not present the rare circumstance in which we will apply the cumulative error doctrine.

¶53 Kirn further argues his trial counsel provided ineffective assistance of counsel (IAC) when counsel failed to object to the instructions he challenges on appeal. We apply the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), to IAC claims. *Chafee*, ¶ 19. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, which requires a showing that counsel was not functioning as guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The appellant claiming IAC bears the burden of proving both prongs. *State v. Deschon*, 2004 MT 32, ¶ 31, 320 Mont. 1, 85 P.3d 756. We have not found deficient performance where counsel fails to object to jury instructions that do not aid the

22

defendant's theory of the case. *Garrett v. State*, 2005 MT 197, ¶¶ 24-26, 328 Mont. 165, 119 P.3d 55. Additionally, this Court "presumes effective assistance of counsel" and that "counsel's conduct falls within a range of acceptable professional assistance, and a defendant must overcome that presumption." *Oliphant v. State*, 2023 MT 43, ¶ 29, 411 Mont. 250, 525 P.3d 1214.

¶54 Kirn contends his counsel had "no plausible justification" not to object to the instructions, exhibiting "egregious" deficient performance. However, Kirn fails to acknowledge defense counsel's theory of his case—a mistaken identity defense—which is unrelated to Instructions 19, 15, 18, and 23-24. While his counsel could have objected to the proposed instructions at trial, the failure to object did not prejudice Kirn because the instructions were unrelated to the theory of mistaken identity. We must presume Kirn's counsel provided effective assistance of counsel and will not interfere with the wide range of acceptable professional assistance. *See Oliphant*, ¶ 29. Kirn has not overcome this presumption, and we hold his instant claims of IAC lack merit.

¶55 *Is Kirn entitled to resentencing because the District Court relied on incorrect information when it imposed his sentence?*

¶56 A criminal defendant has a due process right to be sentenced on correct information. *State v. Edmundson*, 2014 MT 12, ¶ 20, 373 Mont. 338, 317 P.3d 169. When a defendant's sentence is based on incorrect information, the defendant has the right to resentencing. *State v. Van Haele*, 207 Mont. 162, 169, 675 P.2d 79, 83 (1983).[1]

---

[1] The State argues Kirn has waived this argument regarding his sentence because Kirn failed to "contemporaneously object or otherwise raise the issue in the district court." However, this Court

¶57 Kirn argues his sentence was predicated on inaccurate information because the judge said during the sentencing hearing that Kirn had ten prior felonies when he had nine; the judge relied on four felonies which were committed when Kirn was a juvenile; and the court incorrectly assumed Kirn was "already a registered violent offender." Preliminarily, a district court may consider all evidence at the sentencing hearing, including a defendant's "extensive juvenile criminal history." *State v. Coburn*, 2018 MT 246, ¶¶ 15, 24, 393 Mont. 73, 428 P.3d 243. It was not error for the court to consider Kirn's juvenile record.

¶58 While the District Court's written judgment correctly provided that Kirn had only nine felonies, the court, as part of the reasons for imposition of sentence, provided that Kirn had ten felonies. This was based on incorrect information. The District Court also relied on incorrect information when it classified Kirn as a registered violent offender. Ten years after a violent offender must register, the offender's violent offender status automatically expires without a petition process if the offender has not committed any subsequent felonies. *State v. Sedler*, 2020 MT 248, ¶ 19, 401 Mont. 437, 473 P.3d 406. Kirn was convicted of assaulting a police officer in May 1999, but had not committed a subsequent felony within ten years. Kirn was therefore automatically removed from the violent offender registry in May 2009. Although Kirn attempted to interject but was prevented from doing so, his attorney never notified the court that its reference to Kirn as a "registered violent offender" was incorrect.

---

may review due process violations made at sentencing despite a party not having made a contemporaneous objection. *State v. Winter*, 2014 MT 235, ¶ 27, 376 Mont. 284, 333 P.3d 222. We will therefore address Kirn's argument on appeal.

¶59 Accordingly, while the District Court could rely on Kirn's juvenile record, it could not base its sentence on an incorrect number of prior felonies or that Kirn was a registered violent offender. We remand for a resentencing that is based on correct sentencing information.

**CONCLUSION**

¶60 Kirn's constitutional right to a speedy trial was not violated. The instructional error does not warrant plain error review because Kirn has failed to show how he was prejudiced. Because Kirn has failed to show any prejudice, his IAC claim must fail. Kirn is entitled to resentencing based on correct sentencing information, and we remand for this limited purpose.

¶61 Affirmed in part, reversed in part.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE